**Russell Don SNEED, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–01464–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 30, 1997.

**452**

Marjorie A. Meyers, Houston, for appellant.

Carolyn Roch Lyons, Houston, for appellee.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

ANDERSON, Justice.

Russell Don Sneed [Sneed] appeals his felony conviction for driving while intoxicated. A jury returned a guilty verdict and the court assessed punishment at forty-five years confinement in the Texas Department of Criminal Justice Institutional Division.[1]

On appeal, Sneed brings two points of error. Sneed argues the trial court committed reversible error in (1) excluding his medical records offered to establish he previously suffered a serious head injury, and (2) excluding his medical records offered to establish he was taking prescription medication. We affirm.

On November 4, 1994 at approximately 6:30 p.m., Harold Green [Green] noticed an older brown car swerving in front of him from lane to lane, almost hitting the road divider and two vehicles. Concerned the driver might be under the influence or was having mechanical difficulties, he wrote down the car's license plate number and flagged down Metro Police Officer Lewis. The brown car subsequently stopped without incident directly behind Green. While the officer questioned the driver of the brown car, Green observed that the driver appeared upset and his eyes seemed bloodshot. Green

testified at trial he was 60 to 70% sure it was Sneed driving the brown car.

Officer Lewis testified he made contact with Sneed and noticed he had a strong smell of alcohol on his breath and slurred speech. Sneed agreed to take a field sobriety test which Officer Lewis conducted on the shoulder of the freeway. The officer found Sneed's eyes "jerked" during part of the field test, one indication he had been drinking. At that point Officer Johnson arrived and also noted Sneed's breath smelled strongly of alcohol.

The officers had Sneed perform three additional tests: (1) the one leg stand, (2) the walk and turn, and (3) the head tilt test where an individual must close his eyes, tilt his head and count for an estimated thirty seconds. The officers concluded Sneed was highly intoxicated and without the normal use of his mental and physical faculties.

Sneed was taken into custody. One officer noted he found an open bottle of 100 proof bourbon and a glass on the floor board of Sneed's car with some liquid and ice cubes. However, he did not keep either the glass or bottle, and no tests were used to determine the source of the liquid.

At the police station Sneed agreed to take an intoxilyzer test and allow himself to be videotaped performing additional sobriety tests. He requested a blood test but was told, according to police policy, he had to bring his own physician to the station to administer the test. He was unable to do so. At 7:29 p.m. the intoxilyzer test indicated Sneed's breath alcohol concentration was .306 and at 7:33 p.m. a second test demonstrated it was .319, both well above the statutory intoxication limit of .10.

After Sneed performed further sobriety tests on video, the attending officer concluded he was intoxicated. Sneed was arrested and charged with driving while intoxicated. A jury subsequently found Sneed guilty.

At trial Sneed offered Harris County Sheriff's Department medical records, created after he was incarcerated, to show he previously suffered a head injury and was taking

---

1. Sneed was previously twice convicted for driving while intoxicated. Therefore, as a repeat offender he was charged with felony driving while intoxicated.

medication at the time he was arrested for driving while intoxicated. The State objected to the evidence on the basis it was both hearsay and irrelevant.[2] The evidence was excluded, Sneed was convicted and now appeals the trial court's exclusion of his potentially exculpatory post-arrest medial records. Because the trial court did not articulate the basis for its exclusionary ruling, we will review both arguments advanced by the State supporting its opposition to Sneed's post-arrest medical records.

### Standard of Review

■ On appeal, the determination of admissibility of evidence is within the sound discretion of the trial court. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App. 1994). If a decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree, the trial court has abused its discretion. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990)(opinion on rehearing). "Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion." *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim. App.1993). The trial court's ruling on the admissibility of evidence will be upheld if it is permissible under any theory of law applicable to the case. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990) (en banc).

### Hearsay

■ The first argument advanced by the State for the rejection of Sneed's medical records was that the contents constituted inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* TEX.R.CRIM. EVID. 801(d). Hearsay is inadmissible except where provided by the Texas Rules of Criminal Evidence or statute. *See Philpot v.*

*State*, 897 S.W.2d 848, 851 (Tex.App.—Dallas 1995, pet. ref'd)(citing TEX.R.CRIM. EVID. 802). Sneed argues the medical records are admissible as an exception to the hearsay rule as statements made for the purpose of medical diagnosis or treatment. *See* TEX.R.CRIM. EVID. 803(4). This exception is based on the rationale a patient will provide accurate information to a doctor in order to receive effective treatment. *See Fleming v. State*, 819 S.W.2d 237, 247 (Tex.App.—Austin 1991, pet. ref'd). Hearsay evidence, not made in the courtroom and not subject to cross-examination, suffers from certain dangers—faulty perception, faulty memory, accidental miscommunication and insincerity. *See* Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence* § 801.1 at 87 (2nd ed.1993). Because of these dangers, hearsay evidence is generally barred from introduction at trial. *See* Olin Guy Wellborn III, *The Definition of Hearsay in the Federal Rules of Evidence*, 61 Tex.L.Rev. 49, 54 (1982).

But some types of evidence have "substitutive circumstantial guarantees of trustworthiness" reducing the likelihood the evidence is subject to the traditional "hearsay dangers." *See Goode* at 87. Exceptions to the bar on hearsay evidence are based on the premise that the trustworthiness of certain evidence is a substitute for its lack of testimonial safeguards. *See id. at 88; see e.g., Coulter v. State*, 494 S.W.2d 876, 884 (Tex.Crim.App.1973)(noting theory underlying Business Records Act [now business records exception Rule 803(6) ] is "probability of trustworthiness of records regularly kept by an organization while engaged in its activities and upon which it relies in the ordinary course of its activities").

"It is the rule in Texas that self-serving declarations are not admissible in evidence as proof of the facts asserted." *Allridge v. State*, 762 S.W.2d 146, 152 (Tex.Crim.App. 1988); *Singletary v. State*, 509 S.W.2d 572, 576 (Tex.Crim.App.1974); *Hafdahl v. State*, 805 S.W.2d 396, 402 (Tex.Crim.App.1990).[3]

---

2. As to the hearsay objection, the State stipulated to the authenticity of the medical records but maintained statements within the records were not admissible as hearsay.

3. The court's statement in n. 3 in *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990) disavowing the holding in *Hafdahl* that appellant there waived the right to complain the trial court erred in overruling his motion for instructed

The basis for the exclusion of such evidence is its hearsay character. 24 TEX. JUR. 3d (1982) Criminal Law, § 3058, p. 237–38. As exceptions to the general rule of exclusion, a limited amount of self-serving statements are admissible such as statements which are part of the *res gestae* of the offense or arrest, or part of the statement or conversation previously proved by the State, or statements necessary to explain or contradict acts or declarations first offered by the State. *Allridge,* 762 S.W.2d at 152.[4] However, Sneed's medical records do not fall within any of these exceptions, and Sneed does not contend on appeal that they do.

The reliability of Sneed's medical records, and thus the argument by Sneed that they are admissible as an exception to the hearsay rule under Rule 803(4) is substantially weakened by the fact that while statements taken for the purpose of medical diagnosis or treatment normally possess circumstantial guarantees of trustworthiness, their reliability significantly decreases where, as here, they are self-serving statements and sufficient time has elapsed for him to reflect and fabricate an explanation. *Cf. Singletary,* 509 S.W.2d at 577 (stating that delayed explanation by accused "passes from the domain of res gestae and becomes obnoxious as self-serving when the opportunity for reflection arises and fabrication is manifested to suit the exigencies of his situation.").

Even hearsay evidence falling within a recognized exception to the hearsay rule is inadmissible if it lacks the "indicia of reliability sufficient to ensure the integrity of the fact finding process." *Philpot,* 897 S.W.2d at 852 (*citing Porter v. State,* 578 S.W.2d 742, 746 (Tex.Crim.App.1979)). In *Porter,* the Texas Court of Criminal Appeals reversed a conviction and remanded the cause for trial where

letters, reports and documents from the defendant's federal parole file were admitted into evidence over defendant's objection that, due to the hearsay statements in the documents, he was being denied his right of confrontation. *See Porter,* 578 S.W.2d at 746. The *Porter* court concluded that because the documents offered by the State and admitted at trial contained hearsay upon hearsay and opinions regarding the defendant from unnamed sources, it defied reason "to suggest that [these documents], merely because they were collected in a file in a government office, have the indicia of reliability sufficient to insure the integrity of the fact finding process commensurate with the constitutional rights of confrontation and cross-examination." *Id.* We recognize that in *Porter* the proponent of the erroneously admitted evidence was the State, but the analysis there is relevant here because the primary focus is the reliability of the evidence, not the status of the proponent.

The medical records Sneed offered are as equally unreliable. Sneed offered the records for nothing more than his own hearsay statements made approximately a week after his arrest. *Cf. Allridge* (rejecting statements made by the appellant approximately seventeen to eighteen hours after the offense and eight hours after the arrest). Sneed's records contain, among other items, statements that Sneed suffered a head injury in 1994 and has a seizure disorder. The sponsoring witness for the evidence had no knowledge about the source or accuracy of the information contained in the proffered medical records. Thus, as to the basis of the statements and their medical accuracy, there is no evidence that establishes reliability or trustworthiness. As such, they lack the necessary

---

verdict does not affect the validity of our reliance on *Hafdahl* for this evidentiary point of law.

**4.** The Texas Court of Criminal Appeals decision in *Allridge* demonstrates the rationale for rejecting post-arrest self-serving statements. There, the appellant, post-arrest, made two written contradictory statements concerning which individual fired the fatal shot. These statements were made approximately seventeen to eighteen hours after the offense, and seven to eight hours after appellant's arrest. At trial, appellant attempted

to introduce the statements on various theories, contending *inter alia* that they were admissions against interest and admissible as exceptions to the hearsay rule, and that they were part of the res gestae of the offense or arrest. The evidence was refused. The Court of Criminal Appeals held that because appellant's statements did not fall under any of the exceptions to the rule excluding self-serving statements, it was not error for the trial court to refuse to admit that evidence. *Allridge,* 762 S.W.2d at 154.

indicia of reliability sufficient to ensure the integrity of the fact finding process.

Additionally, the theory underlying Rule 803(4) that a patient will provide accurate medical information to his physician in order to gain effective treatment is questionable in this situation. Here, the post-arrest medical records Sneed claims should have been admitted into evidence show he repeatedly refused to take the medication prescribed for the injury he alleges affected his driving. While Rule 803(4) is normally a viable exception to the hearsay rule, in this case it is trumped by the bar on self-serving statements.[5] Self-serving medical records, offered to show past physical injury and medication usage, created *after* arrest simply do not contain the substitutive circumstantial guarantees of trustworthiness necessary to bring the statements within Rule 803(4). Because these records contain inadmissible hearsay, we hold that the trial court did not abuse its discretion in excluding them.[6]

### Relevance

█ The State also urged the trial court to exclude Sneed's medical records because they were not relevant to a determination of his condition at the time of his arrest. Irrelevant evidence is not admissible. *See* TEX. R.CRIM. EVID. 402; *see also Montgomery*, 810 S.W.2d at 386. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence." *See* TEX.R.CRIM. EVID. 401.

Here, Sneed's records, and the statements therein, were created approximately one week after the arrest. None of these records are relevant to proving Sneed actually sustained a head injury or was taking medication *at the time he was arrested.* Even Sneed's counsel had difficulty explaining the medical records relevancy when directly questioned by the trial court:

> THE COURT: Does it [medical record] state that he [Sneed] has, that he has been given these medications prior time to [sic] cover November 4, 1994.
>
> [SNEED'S COUNSEL] Judge, these are just—these are just—
>
> THE COURT: Yes or no?
>
> [SNEED'S COUNSEL] Judge, these records don't start—well, Judge, I did not see that in here.

You know, it appears to me they did independent medical examination, they certainly *interviewed* him. But, no, this is not going to have any, you know, this is not going to contain any of this medical information before or at the time he was arrested. *This would just be subsequent to his arrest.* (emphasis added)

Sneed's counsel offered the medical records to show Sneed's poor performance on the sobriety test was due to a previous head injury and medication Sneed was taking at the time of his arrest.[7] Nevertheless, Sneed

---

5. Sneed cites to several cases in support of his argument Rule 803(4) applies to him. None of these cases involve individuals attempting to use their own statements given to a doctor, post-arrest, in order to escape criminal liability. *See e.g., Tissier v. State*, 792 S.W.2d 120, 125 (Tex. App.—Houston [1st Dist.] 1990 pet. ref'd)(allowing statement of child abuse victim into evidence during abuser's trial). Statements made by assault victims to their examining physician are vastly different from statements made by a prisoner to jail officials which, if true, would allow the inmate to escape confinement. The trustworthiness of a child victim's statements, whose main concern is treatment, is much greater than the out of court statement of a prisoner with a strong incentive to feign injury.

6. Sneed also argues in his brief that the prescription records were admissible pursuant to Rule 803(6) (business records exception). However,

Sneed failed to preserve error on this point and therefore it is waived. *See* TEX.R.APP. P. 52(a). Additionally, Sneed cites a United States Fifth Circuit case to support his argument that the records are admissible subject only to a credibility evaluation by the jury. *See United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir.1989). *Cantu* deals with a completely different situation where the significance of the statements lies in the fact that they were made and not in the truth of the statements. Sneed, however, offered the medical records for the truth of the matter asserted. Therefore, *Cantu* is inapplicable.

7. Sneed was given two sobriety tests: one at the scene of the arrest, and the second at the police station which was recorded on videotape. On appeal, it is asserted that Sneed was unable to perform some of the activities on the videotaped test "due to some injuries". We reviewed the

never explains how medical records taken after his arrest are relevant to proving his alleged medical condition at the time of his arrest.

That this evidence is devoid of relevance to the issue of Sneed's sobriety at the time of his arrest is further demonstrated by Officer Johnson's testimony that before he administered the horizontal gauge nystagmus test, a test designed to measure sobriety, he asked Sneed whether he suffered from any type of injury.

## CROSS-EXAMINATION

(BY [SNEED'S ATTORNEY])

Q. Did you ask Mr. Sneed whether he had ever suffered any head trauma before?

A. I asked did he have any injuries that I needed to know about. That's a standard question I always asked.

Q. Did he tell you that he had in fact suffered a head injury before?

A. No.

Sneed only indicated he was injured and taking medication at the time of his arrest for the first time at trial. Furthermore, the medical records do not reflect that Sneed took any medication prior to the arrest. They only indicate Sneed was subsequently prescribed medication which he refused to take on numerous occasions.

We hold that Sneed has failed to show a clear abuse of discretion by the trial court in excluding his post-arrest medical records. These records do not have the necessary indicia of reliability to come within an exception to the hearsay exclusion that Sneed's medical records prior to the arrest would have. However, Sneed failed to offer any pre-arrest medical records reflecting the nature of his head injury, any prescribed medication, and its side effects. Moreover, these records contain self-serving declarations which are uniformly excluded except under certain limited circumstances not argued by Sneed. Because the contents of Sneed's post-arrest medical records, based on the

videotape taken at the police station of Sneed performing various activities, and while he did mention injuries to his legs which prohibited

record before us, are inadmissible hearsay and have no relevance to Sneed's medical condition at the time of his arrest, we overrule Sneed's two points of error.

We affirm the judgment of the trial court.

certain movements, he never stated that he had sustained a head injury.