

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-232-CR**

JAMES PROX                                                          APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.  Introduction

The State charged Appellant James Prox, a Texas Department of Criminal

Justice (TDCJ) inmate, with committing an aggravated assault with a deadly weapon

against Rodney Howard, another TDCJ inmate.[2]  The jury found Prox guilty and

---

[1] *See* Tex. R. App. P. 47.4.

[2] Because Prox challenges the factual sufficiency of the evidence, we will discuss the facts in detail below.

assessed his punishment at life imprisonment. The trial court entered judgment accordingly, and Prox brings three issues on appeal.

## II. Evidentiary Issues

In his third issue, Prox challenges the factual sufficiency of the evidence to support his conviction and contends that "[t]he great weight and preponderance of the evidence establishes that the jury wrongfully rejected [his] claim of self-defense." In his first issue, he argues that the trial court abused its discretion by excluding evidence relevant to his self-defense claim.

### A. Factual Sufficiency

#### 1. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of

all the evidence, although legally sufficient, contradicts the verdict.  *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."  *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction.  *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

Because self-defense is classified as a defense rather than an affirmative defense, we apply the factual sufficiency review generally applied to convictions to an appellant's challenge to the jury's implicit finding beyond a reasonable doubt against his self-defense claim.  *Bundy v. State*, 280 S.W.3d 425, 433 (Tex. App.—Fort Worth 2009, pet. ref'd).

### 2. Evidence

#### a. Howard's Testimony

Howard testified that on December 10, 2004, Prox, his cell mate of two to three weeks, attacked him with a razor that was tied to his hand.  Howard testified that Prox wanted to be in the cell by himself, so "right off" they had problems.  On the day of the incident, Prox left the cell for recreation.  When he returned, he made a comment to Howard about wanting a cell by himself, to which Howard retorted that

3

he thought "all diabetic inmates should be in the cell with one another anyway." Prox is diabetic.

Howard testified that Prox started the altercation—he saw Prox approach him from behind in the reflection from the plexiglass pane in the cell door and then Prox attacked him:

> I saw him when he got up, and I saw him move behind me. And when I turned around, he had—he was raised up just like he was going to strike me. But when he struck me, it was—he cut me. Cut me on my biceps. . . .
>
> I tried to grab his hand, and then he cut me on my right wrist. By this time, I did—I was able to get hold of his hand. And I kneed him in his groin. And I pushed him up against the wall trying to get leverage on his arm.
>
> He cut me in the face a couple of times, and cut me in my chest, also. So I grabbed him and rushed him across the cell. And got on to the bottom bunk and got on top of him and started punching him in his face. . . .
>
> I was punching him, trying to knock him out so I could take whatever weapon he had from him. Because I realized he had it tied onto his hand. And the only way I was going to be able to get it away from him was to knock him out.

Howard testified that officers arrived while he was punching Prox and that the officers told them to break it up. He punched Prox a few more times, knocking Prox out to the extent that he could unwrap the string from Prox's hand, remove the weapon, and throw it to the officers through the "bean slot"[3] in the cell door.

---

[3] A "bean slot" is the section of the door used to put food into a cell to feed the inmates.

4

### b. Prox's Testimony

Prox testified that on December 10, 2004, he left the cell for recreation to "get away from [Howard]." He stated, "That dude [Howard] had been trouble ever since he moved in there," and testified that he had filed administrative forms trying to move away from him. When Prox returned from recreation,

> [Howard] was sitting there waiting. He jumped down. Told me—said you trying to go out there to pay somebody to jump on me. I said, man, I don't know anything about you. So when I sit on the bed, he—I thought he hit me. But he cut me. When he cut me, I throwed [sic] my hands up.

He testified that the cut he referred to was depicted on State's Exhibit 36, and he tried to take off his shirt to show the jury the scars from the cuts on his chest. Prox also testified that he did not have a knife, that he hit Howard with a coffee cup in self-defense, and that Howard was a known psychopath who had choked him two or three times before the incident.[4]

---

[4] On cross-examination, Prox testified,

Q. So it's your story that Mr. Howard was just picking on you for no reason; is that correct?

A. Yes, sir.

Q. That he picks on everybody?

A. He picks on—that's why he got moved.

Q. And everybody knows he's crazy and he's trouble?

A. Everybody know[s] it.

Prox stated, "I don't do nothing. I don't bother nobody. Only thing I do is try to do my time." However, on cross-examination, he admitted that he had had problems while incarcerated, including disciplinary cases charging him with fighting with a weapon, fighting without a weapon, threatening an officer, and threatening an inmate. He claimed that he had been set up. The trial court gave a limiting instruction on credibility with regard to this testimony.

Prox testified that his physical condition at the time was too poor for him to attack anyone because he had been waiting on bypass surgery and hernia surgery and that his "stomach was so big and so swole [sic] that [he] couldn't even get up in the bed."[5] He testified that he had bad arteries, that he had 180 pounds of pressure in his right leg and eighty pounds of pressure in his left leg, that he had high blood pressure, and that he was diabetic. Prox claimed that because he had no circulation in his legs, he was assigned the bottom bunk and this made Howard angry.

Prox attempted to unbutton his shirt to show the jury his surgical scars. The trial court sustained the State's objection to the relevance of Prox's post-incident surgical scars and "based upon not having the medical testimony that would establish that [the medical condition] was affecting him on the date of th[e] occurrence," but it allowed Prox to make a bill of exception. In Prox's bill of exception, he testified that the first surgery was performed about a month after the

---

[5] He testified, "I'm taking so much medication that I couldn't—I couldn't do nothing," and "I'm not healthy and strong no more."

6

incident and the second surgery occurred six months later. He testified that he had a herniated small intestine, that he had a scar ten inches long and one inch wide from the first procedure, and that the doctors "had to go all the way down and inside the stomach and on both sides of the legs to make enough to get circulation in the legs." He testified that the doctors discovered that he had artery blockage during his second surgery and that his second surgery resulted in a scar six inches long. Prox stated that his circulatory problems existed at the time of the incident with Howard.

### c. Other Evidence

At the time of the incident Howard was thirty-nine-years old, six feet tall, and weighed around 150 pounds. He had been convicted of kidnapping, robbery, and aggravated sexual assault, and he had two prior burglary-of-a-habitation convictions. Prox was a forty-eight-year-old insulin-dependent diabetic receiving injections twice a day, with additional health problems listed above. He was five feet, five inches tall, weighed around 158 pounds, and had been convicted of attempted murder and murder with a deadly weapon.

Photographs of Howard's injuries to his face, neck, shoulder, chest, wrist, and hand were admitted in evidence. The trial court also admitted in evidence photographs of Prox's injuries—Howard admitted that he "swole [sic] up one of [Prox's] eyes" and might have busted his lip and that Prox might have been cut when they were wrestling and when he tried to take the razor from Prox. The weapon,

7

composed of one or more razor blades attached to a plastic razor handle,[6] was also admitted in evidence.

Officer Marion Johnston, who had been working in Prox and Howard's cell block that day, corroborated Howard's description of the fight, although he admitted that he did not know who instigated it. He testified that other inmates alerted him to the cell fight and that when he arrived, he saw Howard on top of Prox on the bottom bunk, trying to remove a weapon from Prox's hand. Prox had the weapon tied with a string to his wrist, and Officer Johnston saw Prox slash out at Howard with the weapon at least three times. He and the other officers ordered the inmates to stop fighting, which the inmates did after a few more blows; the weapon dropped from Prox's hand, still attached to his wrist, and Howard complied with one of the other officer's orders to grab the weapon and toss it out of the cell. The officers secured the inmates with hand restraints and took them for medical treatment because both had injuries.

Officer William Moss testified that he responded with Officer Johnston to the fight between Prox and Howard. He testified that Prox had a weapon wrapped in his right hand and that Prox and Howard were wrestling, with Howard trying to get the weapon from Prox and yelling, "[H]e's stabbing me. He's stabbing me." He testified that the fighting stopped when the officers threatened to gas them, Prox unwrapped

---

[6] More than one witness testified that this type of weapon is common in prison. Officer Johnston testified that such weapons are capable of causing serious bodily injury and possibly death if they strike a jugular vein.

8

the weapon from his hand, and Howard picked up the weapon and threw it out of the bean slot. Officer Moss also testified that the usual protocol for an inmate going to recreation is to search the inmate before he is escorted to recreation and to search him upon his return from recreation.[7] He stated that he had no personal knowledge as to where the weapon was kept, other than in some crevice that had evaded detection in prior cell searches.

Julie Diamond, a criminal investigator for the Office of the Inspector General, testified that she investigated the incident. She took photographs of the inmates' cell immediately after the incident—including photographs of a towel on the sink area with blood on it and blood droplets and smears on the floor, walls, and bottom bunk—and of the inmates' injuries. She also collected the bloodstained sheet that was on top of the bottom bunk.

### 3. Analysis

To convict Prox of aggravated assault with a deadly weapon, the jury had to find that Prox intentionally, knowingly, or recklessly caused bodily injury to Howard by cutting him with a razor blade and that a razor blade was a deadly weapon. *See* Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp. 2009) (defining deadly weapon as anything manifestly designed, made, or adapted for the purpose of inflicting death

---

[7] The weapon's maker was unknown. In response to Prox's counsel's question, "For all you know, Rodney Howard has a certificate of title to that weapon; is that right?" Officer Moss replied, "He could." However, he also testified that based on what he observed, his impression was that Prox was the weapon's owner.

or serious bodily injury or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury), § 22.02 (Vernon Supp. 2009) (defining elements of aggravated assault with a deadly weapon). To acquit Prox of committing aggravated assault with a deadly weapon, the jury would have had to find that Prox was justified in using force to defend himself. *See id.* § 9.31 (Vernon Supp. 2009) (defining justification of self-defense). A defensive instruction such as self-defense is only appropriate when the defendant's evidence essentially admits to every element of the offense including the culpable mental state but interposes the justification to excuse the otherwise criminal conduct. *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007), *cert. denied*, 128 S. Ct. 2486 (2008).

According to Prox, the evidence showed that:

(1) [Prox] had diabetes, a chronic medical condition that seriously limited his mobility and reduced his strength while Mr. Howard was younger, stronger, and physically fit;

(2) [Prox] and Mr. Howard are both convicted felons and both denied instigating the assault;

(3) [Prox] and Mr. Howard disliked each other;

(4) [J]ust before the fight, Mr. Howard accused [Prox] of setting up a "hit" on Mr. Howard;

(5) [Prox] had just returned from the recreation yard when the assault occurred;

(6) [P]olicy required [Prox] to be searched for contraband when he returned from the yard;

(7) Mr. Howard had not left the cell on the day of the fight;

10

(8) [O]nly [Prox] and Mr. Howard have personal knowledge of who started the fight or who had the weapon when the fight started;

(9) [T]he assault occurred on the bed at the far wall of a dimly-lit cell;

(10) [T]he officers did not see the fight start;

(11) [T]he officers viewed the fight from outside the cell and about [twelve] feet away from the bed, which was partially obscured by a hanging sheet;

(12) [T]he officers saw Mr. Howard on top of and struggling with a prone [Prox];

(13) [T]he officers saw a weapon fall to the floor during the fight;

(14) [T]he weapon was a shank made from a razor; and

(15) [B]oth [Prox] and Mr. Howard sustained cuts during the fight.

Prox complains that the only evidence supporting the verdict was Howard's testimony and the officers' testimony that they saw the weapon fall out of Prox's hand.

According to Prox's recital above and the necessary inferences therefrom, Prox was weak and Howard was strong, one was lying about who started the fight (in his view, Howard), both were cut, the officers saw Howard on Prox and saw a weapon fall, and Prox had been at recreation before the fight (and must therefore have been searched before re-entering the cell) so the weapon could not have been his. Prox also claims that Howard's testimony was not more credible than his own.

The jury had the responsibility to determine the weight and credibility of the evidence—essentially, whether to believe Howard or Prox—and we must give due

11

deference to that determination. *See Steadman*, 280 S.W.3d at 246; *Johnson*, 23 S.W.3d at 9. Viewing all of the evidence in a neutral light, the jury could have chosen to believe Howard's testimony that Prox instigated the altercation by attacking and cutting him, particularly in light of the photographs of Howard's injuries to his face, neck, shoulder, chest, wrist, and hand and Officer Johnston's testimony that he saw Prox slash out at Howard with a weapon at least three times during the incident. *See Steadman*, 280 S.W.3d at 246. Furthermore, although Prox claimed he was physically incapable of attacking Howard, the record reflects, based on his own testimony, that he was physically able to go to recreation and to defend himself with a coffee mug. Therefore, the jury could have reasonably concluded that Prox was also physically able to perpetrate an attack on his cell mate. And Officer Moss testified that the weapon could have been hidden in the cell and could have belonged to either inmate. From this, and from Officers Johnston and Moss's testimonies about seeing Prox use the weapon, the jury could have reasonably concluded that Prox hid the weapon in the cell before going to recreation and then used it upon his return to attack Howard.

Additionally, based on our review of the record, we cannot agree with Prox that the evidence was factually insufficient to justify the jury's rejection of his self-defense claim. We cannot say that the evidence supporting the conviction is so weak that the jury's determination is clearly wrong and manifestly unjust or that the conflicting evidence—Prox's testimony containing his version of events—so greatly

12

outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. Therefore, we overrule Prox's third issue.

## B. Self-Defense

In his first issue, Prox complains that the trial court erred by excluding "evidence about his incapacitating medical conditions," which he contends was relevant to his claim of self-defense because "it tended to prove he lacked the physical strength to initiate an assault." Specifically, he argues that the trial court prevented him from presenting an effective defense by refusing to let the jury hear about the debilitating nature of his medical conditions and to see the severe scarring on his body left by the surgeries for his circulatory problems and hernia. He contends that admission of this evidence "would have increased the jury's knowledge about the improbability of [Prox] instigating a physical attack" on Howard.

### 1. Standard of Review

We review a trial court's decision to exclude evidence for an abuse of discretion. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling falls within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, we will affirm its decision. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). The trial court's decision must be reasonable in

13

view of all the relevant facts.  *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

### 2. Analysis

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Tex. R. Evid. 401. Evidence is relevant to self-defense when it shows that a defendant reasonably believed that "force [was] immediately necessary to protect [himself] against the other's use or attempted use of unlawful force."  *See* Tex. Penal Code Ann. § 9.31(a); *Teakell v. State*, 143 Tex. Crim. 471, 473, 159 S.W.2d 504, 504–05 (1942).  Furthermore, on the issue of self-defense, testimony as to the relative size, strength, and other physical characteristics showing the disparity between the accused and the complainant, as a ground for apprehension, and also upon the question as to which party was the aggressor, is relevant.  *Mosby v. State*, 482 S.W.2d 256, 258 (Tex. Crim. App. 1972) (addressing relevance of the condition of a deceased complainant).

As set out above, some of Prox's testimony about his post-incident surgery and medical condition was excluded by the judge "based upon the relevance, and

14

also based upon not having the medical testimony that would establish that it was affecting him on the date of this occurrence." A review of Prox's bill of exception reveals that Prox would have testified that he had two surgeries after the incident, one to repair his herniated small intestine and another to correct circulation problems in his legs, and that prior to surgery, his stomach was distended and he could put no pressure on his legs.

We initially note that the trial court allowed Prox to present testimony to the jury that his physical condition at the time of the incident—his diabetes, his swollen stomach, his then-upcoming bypass and hernia surgeries, his high blood pressure, and the lack of circulation in his legs—was too poor to allow him to attack anyone. And photographs taken immediately after the incident, showing his physical appearance at the time, were presented to the jury.

Although Prox argues that the jury needed to see his post-incident surgical scars to show that his subsequent surgery "was seriously invasive and indicative of his debilitated medical condition," we have found no cases holding that such after-the-fact evidence is relevant. *Cf. Teakell*, 143 Tex. Crim. at 473, 159 S.W.2d at 504–05 (holding that it was error to exclude appellant's requested exhibition on the witness stand of the scars from the wounds that were inflicted on him during his altercation with the complainant); *Boyd v. State*, No. 01-98-00167-CR, 1999 WL 442156, at *1–3 (Tex. App.—Houston [1st Dist.] July 1, 1999, no pet.) (not designated for publication) (holding it was error to exclude exhibition of Boyd's knee-

15

surgery scars when his loss of normal use of physical faculties was at issue in DWI case, but the error was harmless when Boyd's witness testified that Boyd had undergone knee surgery, to explain his failure to successfully complete the one-legged-stand field sobriety test); *Sorenson v. State*, 856 S.W.2d 792, 793–95 (Tex. App.—Beaumont 1993, no pet.) (holding that trial court committed harmless error in felony DWI case when it excluded evidence pertaining to the condition of appellant's legs and feet at the time he performed field sobriety tests involving leg movement); *Wolford v. State*, 675 S.W.2d 530, 533 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) (holding that showing complainant's wounds and surgical scars was relevant to appellant's claim of self-defense when there was disputed testimony about whether appellant shot him in the abdomen or in the back).

To the contrary, one of our sister courts has upheld the exclusion of similar evidence when, as here, it failed to show the appellant's condition at the time of the incident. *See Sneed v. State*, 955 S.W.2d 451, 455–56 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (upholding exclusion in DWI case when appellant's medical records were created approximately a week after his arrest and so were not relevant to prove that appellant had actually sustained a head injury or had taken medication at the time he was arrested). We hold that the trial court did not abuse its discretion by excluding evidence of surgical scarring that occurred after the incident in question, and we overrule this portion of Prox's first issue.

According to his bill of exception, Prox would also have testified that he could not push down on his legs or put pressure on his legs. While this is somewhat redundant of his testimony that the trial court admitted, we will assume, without deciding, that it was error to exclude the testimony about his legs' condition.

We must conduct a harm analysis to determine whether the assumed error calls for reversal of the judgment. Tex. R. App. P. 44.2. The admission or exclusion of evidence is generally not of constitutional dimension. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *see also Walters v. State*, 247 S.W.3d 204, 222 (Tex. Crim. App. 2007). Hence, we apply rule 44.2(b)—the exclusion must have affected a substantial right. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall*, 961 S.W.2d at 643. Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the

17

evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Based on our review of the record, we conclude that, in the context of the entire case against Prox, any error by the trial court in excluding the testimony in question did not have a substantial or injurious effect on the jury's verdict and did not affect his substantial rights in that the evidence of his medical condition and claim of physical inability to attack Howard was already squarely before the jury. *See King*, 953 S.W.2d at 271. Thus, we disregard the error, if any, and we overrule the remainder of Prox's first issue. *See* Tex. R. App. P. 44.2(b).

### III. Jury Charge

In his second issue, Prox argues that, with regard to the trial court's self-defense instructions to the jury, the trial court erred by making "repeated and unnecessary references to a razor," which he also contends assumed the truth of a contested issue. He further complains that the trial court erred by denying his own requested jury instructions on self-defense. For purposes of our analysis, we assume, without deciding, that Prox was entitled to an instruction on self-defense.[8] *Cf. Shaw*, 243 S.W.3d at 657–59; *Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex.

---

[8] Prox states in his briefing to this court, "Appellant denied that he used a weapon, much less a deadly weapon, to defend himself against Mr. Howard."

18

Crim. App. 2004) (stating that when Nailor argued that he did not perform the actions alleged by the State, he was not entitled to an instruction on self-defense).

Prox objected "to the inclusion of the manner and means language in the application paragraph" of the self-defense deadly force and non-deadly force instructions. The deadly-force self-defense instruction in the application portion of the trial court's charge stated:

> Now, if you find from the evidence beyond a reasonable doubt that the defendant, James Prox, did intentionally, knowingly, or recklessly cause bodily injury to Rodney Howard *by cutting Rodney Howard with a razor blade, and did then and there use or exhibit a deadly weapon, to-wit: a razor blade that in the manner of its use or intended use was capable of causing death or serious bodily injury during the commission of the said cutting*, as alleged, but you further find from the evidence, or you have a reasonable doubt thereof, that viewed from the standpoint of the defendant at the time, from the words or conduct or both, of Rodney Howard, it reasonably appeared to defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Rodney Howard, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Rodney Howard's use or attempted use of unlawful deadly force, he cut Rodney Howard with said deadly weapon, and that a reasonable person in defendant's situation would not have retreated, then you will find the defendant not guilty. [Emphasis added.]

The non-deadly-force self-defense instruction in the application portion of the trial court's charge stated:

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, James Prox[,] intentionally, knowingly, or recklessly cause[d] bodily injury to Rodney Howard *by cutting Rodney Howard with a razor blade*, but you further

19

find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both, of Rodney Howard it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of bodily injury from the use of unlawful force at the hands of Rodney Howard, and that acting under such apprehension and reasonably believing that the use of force on his part was immediately necessary to protect himself against Rodney Howard's use or attempted use of unlawful force, *he cut Rodney Howard with a razor blade*, then you should acquit the defendant on the grounds of self-defense, or, if you have a reasonable doubt as to whether or not the defendant was acting in self defense on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict not guilty.  [Emphasis added.]

During the charge conference, Prox elaborated on his objection, stating,

It's our position that if the State is not bound by manner and means because manner and means is not an element of an offense, it would also not be an element of a defense.  And the jury could possibly reject the defendant's self-defense instruction because they didn't find that—that the manner and means was proven as it's—as it's charged to the jury.[9]

The State responded that, if Prox's objection was that it was all surplusage, then the State was bound by it, so it was appropriate to have that language in the charge. Prox provided no further argument on the issue.  The trial court overruled Prox's

---

[9] We note that if the jury did not find that the manner and means was proven as charged, then it would have to acquit Prox, also as charged in the jury instructions.

objection,[10] and it denied his request that the trial court substitute Prox's proposed instructions for non-deadly and deadly force.[11]

## A. Standard of Review

Although Prox objected to the inclusion of the manner and means in the self-defense instructions, he did not articulate at trial the argument that he now presents on appeal, which is that

> by submitting, over [Prox's] objections, jury instructions that improperly commented on the weight of the evidence *by assuming the existence of a controverted fact and drawing undue attention to one piece of evidence . . . the charge repeatedly and unnecessarily stated that the manner and means of assault was with a razor, which was a contested issue*.  [Emphasis added.]

Appellate review of error in a jury charge involves a two-step process.  *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287

---

[10] The trial court elaborated upon its decision, stating,

> Well, my thought is that the language has been used the same in the charging paragraph of the offense . . . as in the use of self-defense, and that it's consistent to use it both places or to take it out both places.  And in the defense of self-defense it seems to me that basically you are, in essence, admitting the allegation that's in the indictment, but simply saying I have a defense to why I did that.
> And so since it's tracking the language in the indictment and it's being used consistently, both in the charging paragraph as well as in the defensive paragraph, then I will overrule the objection.

[11] In his proposed instructions, Prox asked that the application paragraphs for self-defense state that if the jury found that he "did cause bodily injury to Rodney Howard," then to consider whether he acted in self-defense, without specifying *how* he caused the bodily injury.

S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we must determine whether error occurred. If it did, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

A complaint made on appeal must comport with the complaint made in the trial court or the error is unpreserved. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). That is, the complaint must be "essentially the same." *Clarke v. State*, 270 S.W.3d 573, 580–83 (Tex. Crim. App. 2008) (discussing cases). To determine whether the complaint on appeal comports with that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Pena*, 285 S.W.3d at 464. Based on the context presented to us by the record, it would appear that Prox objected to the inclusion of the manner and means language as surplusage. Therefore, we apply the standard of review for unpreserved error to his jury charge complaint. That is, we must decide whether, if there was error, it was so egregious and created such harm that he did not have a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

## B. Improper Comment

## 1. Manner and Means

As a general rule, the trial court's charge to the jury should correspond to the allegations in the indictment. *Hardie v. State*, 588 S.W.2d 936, 938 (Tex. Crim. App. 1979); *see also Andrews v. State*, 652 S.W.2d 370, 374 (Tex. Crim. App. 1983) ("The general rule is that it is usually permissible to track the pertinent part of the charging instrument when preparing the application paragraph."). And proof of the use or exhibition of a deadly weapon is an essential element of the offense of aggravated assault with a deadly weapon as charged in the indictment. *See Leal v. State*, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009) ("[A]ggravated assault based on the use of a deadly weapon may become assault if the alleged use of a deadly weapon is disproved."); *see also Rodriguez v. State*, No. 04-04-00230-CR, 2005 WL 899963, at *2 (Tex. App.—San Antonio Apr. 20, 2005, pet. ref'd) (mem. op., not designated for publication) ("Proof of the use or exhibition of a deadly weapon is an essential element of the offense of aggravated assault as it was charged in the indictment [under penal code section 22.02(a)(2)].").

The indictment here alleged that Prox

> intentionally, knowingly, or recklessly cause[d] bodily injury to Rodney Howard, by cutting Rodney Howard with a razor blade and did then and there use or exhibit a deadly weapon, to-wit:  a razor blade, that in the manner of its use or intended use is capable of causing death or serious bodily injury, during the commission of said offense.

The language in the deadly-force self-defense instruction corresponded to that of the indictment.  *See Hardie*, 588 S.W.2d at 938; *see also* Tex. Code Crim. Proc. Ann.

23

art. 36.14 (Vernon 2007) (stating that in delivering the jury charge, the trial court shall set forth the law applicable to the case, "not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury"). And the language in the non-deadly force self-defense instruction corresponded to that contained within the trial court's lesser-included-offense instruction on assault. Therefore, the trial court necessarily included the manner and means of the alleged offense in its self-defense instructions. We overrule this portion of Prox's second issue.

## 2. Repetition

Prox complains that the trial court's charge "used the unnecessary and extra-statutory term 'razor' in at least four application paragraphs." Although Prox argues that specifying the razor is a comment on the weight of the evidence, we disagree on the facts presented by this record.

Texas Jurisprudence sets out the following on the issue of repetition:

> It is error to give undue prominence to certain issues by repeating instructions relative to the same issue. Where the jury has once been instructed on a proposition of law, it is not necessary that the proposition be repeated in every paragraph of the charge.

> However, repetitions are not error when they are necessary in order to apply any given rule of law to the various phases of the case raised by the evidence, or when they are not given such prominence as to mislead the jury into believing that the issue referred to is the controlling one. Thus, the definition of an offense may be contained in more than one paragraph of the charge.

24

24 Tex. Jur. 3d *Criminal Law* § 3175 (2010) (internal citations omitted); *see also Woodard v. State*, 54 Tex. Crim. 86, 88, 111 S.W. 941, 942 (1908) ("The charge does repeat on the issue of provoking the difficulty, but the charges are accurate in every particular as laid down by the rules of this court, and we will not reverse the case on account of repetition alone."). Repetition of the indictment language as to the alleged deadly weapon (razor) was necessary to apply the law of self-defense as raised by the evidence. *See* 24 Tex. Jur. 3d *Criminal Law* § 3175.

Furthermore, while a seemingly neutral instruction may constitute an impermissible comment on the weight of the evidence when it singles out a particular piece of evidence for special attention, this is not what occurred here. *Cf. Bartlett v. State*, 270 S.W.3d 147, 152, 154 (Tex. Crim. App. 2008) (holding that trial court's seemingly neutral explanation of the law with respect to the admissibility of the refusal to take a breath test constituted an impermissible comment on the weight of the evidence). That is, because the case turned on the specific manner and means used—whether Prox cut Howard with a razor blade—by necessity, the jury instructions on aggravated assault, assault as a lesser-included offense, use of deadly force in self-defense, and use of non-deadly force in self-defense required the jury to make a finding on that issue. *Cf. Veteto v. State*, 8 S.W.3d 805, 816–17 (Tex. App.—Waco 2000, pet. ref'd) (holding that instruction improperly singled out complainant's testimony when it stated that if the jury believed "the victim's" testimony beyond a reasonable doubt, this was sufficient to support a finding of guilt,

25

and that referring to the complainant as "the victim" instead of as "the alleged victim" also constituted an improper comment on the weight of the evidence because aggravated sexual assault case's sole issue was whether complainant was actually a victim), *abrogated on other grounds by State v. Crook*, 248 S.W.3d 172 (Tex. Crim. App. 2008).

We hold that the inclusion of the word "razor" in the jury instructions, when viewed in light of the entire jury charge, does not improperly assume that Prox used a razor. Rather, the jury is asked to decide that *if* it believed that Prox used a razor to cut Howard, as alleged in the indictment, was Prox's action justifiable as an act of self-defense? *Cf. Marlow v. State*, 537 S.W.2d 8, 9–11 (Tex. Crim. App. 1976) (stating that there are two exceptions that allow a trial court to assume in its charge any fact to be true—when the fact is one that the court may judicially notice and when the defendant judicially admits that the fact is true—and holding that neither exception applied when charge stated, "if you find . . . the motion picture film depicting various acts of oral sodomy . . . to be obscene . . .," when it assumed that the motion picture film depicted those acts); *Harkins v. State*, 268 S.W.3d 740, 745–46 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that penal code section 49.10 referring to "the dangerous drug" must be read with intoxication definition in section 49.01 referring to "a dangerous drug," and that instruction specifying that "the fact that the defendant is or has been entitled to use *the* dangerous drug is not a defense [to DWI]," when one of the fact issues for the jury was whether Harkins had

26

taken *a* dangerous drug at all, constituted an improper comment on the weight of the evidence).

Because the jury instructions in this case required a statement of the manner and means, and because repeating the manner and means did not constitute error, we need not address the remaining portion of Prox's second issue, in which he complains that the trial court erred by denying both of his requested jury instructions on self-defense. *See* Tex. R. App. P. 47.1. We overrule the remainder of Prox's second issue.

## IV. Conclusion

Having overruled each of Prox's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 27, 2010