**Simon SORENSEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–92–121 CR.**

Court of Appeals of Texas, Beaumont.

June 2, 1993.

---

Richard Ellis Turkel, Orange, for appellant.

Steve Howard, County Atty., Gary R. Bonneaux, Asst. County Atty., Orange, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

This appeal is from a conviction for the felony offense of driving while intoxicated. A jury found appellant guilty and assessed punishment at two and one-half years' imprisonment and a fine of $1650. We affirm.

Department of Public Safety Trooper Gary Hinton was the State's first witness. He testified that on June 16, 1990, appellant was driving an automobile on a public highway when he noticed the automobile was emitting an excessive amount of smoke. He also noticed that neither the driver nor the front seat passenger were wearing seat belts. As a result he had appellant pull his vehicle over into a parking lot. This was around 6:20 p.m. Appellant exited the vehicle and met Trooper Hinton halfway between the patrol unit and appellant's vehicle. Trooper Hinton testified appellant had a slight sway or slight wobble and was just a little bit unsteady when appellant approached, his eyes were red, glassy and bloodshot, his speech was somewhat slurred, his breath had a very strong odor of alcoholic beverages and there were open containers of beer in the vehicle. Based on these facts, Trooper Hinton suspected appellant was intoxicated. Consequently he asked appellant to perform a HGN (Horizontal Gaze Nystagmus) test which is supposed to measure the involuntary jerkiness of the eye movement. Trooper Hinton concluded, based upon his observations and the results of the HGN test, that appellant was intoxicated and his blood alcohol content would be at least .10 or higher on the intoxilyzer test. Trooper Hinton then arrested appellant and his passengers.

Hinton transported all three to the Orange County Jail where sobriety tests were to be conducted and videotaped. The appellant was asked to perform various tests; however, he was unable to perform all but one. Appellant explained he had a serious leg injury which hampered his performance. Appellant was able to perform the one test which did not involve leg movement. The jury was allowed to view the video tape and the sobriety test.

At about 7:44 p.m., Trooper Hinton administered an intoxilyzer test to appellant. Hinton admitted the intoxilyzer machine recorded an "invalid" result prior to appellant's test. When the test was administered to appellant, he registered a .121 on the first try and a .117 on the second.

The next witness for the State was Dowd Hauver. Mr. Hauver is a technical supervisor with the Texas Department of Public Safety. His duty was to maintain and check the intoxilyzer instrument of every law enforcement agency throughout South-

east Texas. Hauver testified he checked the Orange County intoxilyzer machine at least once a month sometimes twice. Hauver stated that for a good reading to be determined two tests must be done and there must be only a .02 difference between the two tests. Hauver expressed the opinion that, based on the results of the two test readings, appellant was intoxicated.

Appellant testified he had only drunk three beers between 4:00 p.m. and 6:00 p.m. He testified the officer gave an HGN test to the two passengers but not to him. He further testified he did not have anything to drink in the car and did not notice either passenger with anything to drink inside the car. He said he told Trooper Hinton half of his left heel had been cut off, he had arthritis in both knees and a portion of his calf was missing. He told Hinton that as he walked his legs jerked a lot and people had commented that he walked like a duck. When appellant offered to exhibit the scarring as to the foot and the calf to the jury, the State objected and the objection was sustained by the court.[1] The State never questioned or denied the existence of the appellant's scar on his leg.

Appellant's first point of error urges the trial court wrongfully excluded evidence beneficial to his contentions. In determining reversibility, the Court of Criminal Appeals set up a two-prong test in *Bird v. State,* 692 S.W.2d 65 (Tex.Crim.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). The court held that in order to reverse a trial court judgment, an appellate court must first, determine whether or not the offered evidence was relevant and second, whether the exclusion of such evidence was harmful to the accused.

▪ Relevancy is determined when the evidence has a tendency to make the existence of any fact that is of consequence to the determination of the case more probable or less probable than it would without such evidence. *See* Tex.R.Crim.Evid. 401. Consequently, any item of evidence that

alters the probability of a consequential fact is relevant because to alter the probabilities of a fact there must necessarily be a subjective relationship between the proffered evidence and the ultimate fact. In other words, for an item of evidence to alter the probabilities of the existence of the consequential fact and thus be relevant it must logically increase one's knowledge and enhance the likelihood of ascertaining the truth about the fact. *See Brown v. State,* 757 S.W.2d 739 (Tex.Crim.App.1988). The issue before this Court is whether the trial court wrongfully excluded evidence beneficial to the appellant's contention.

▪ The State relied heavily upon the testimony of Trooper Hinton. Since the State had placed the appellant's lack of control of his movements in issue, evidence of his scars and injury to his left foot and leg should have been allowed before the jury. Visual, real, demonstrative evidence is admissible at trial of a criminal case if it tends to resolve some issue in the case and is relevant. It has evidentiary, probative value. *See Simmons v. State,* 622 S.W.2d 111 (Tex.Crim.App.1981). Furthermore, the inflammatory nature or sympathetic nature of a particular exhibit or fact will not bar its admissibility if it is relevant to the issue at trial. The issue need not be contested; it only needs to be material. Tex.R.Crim.Evid. 401, 402, 403. Therefore, it was error to exclude the evidence. We now turn to the question of whether or not the error was harmless or cured.

▪ The test for harm, in an exclusion of evidence scenario, is whether there is a reasonable probability the absence of the evidence contributed to conviction or affected the punishment. *Bird,* 692 S.W.2d at 70. Trooper Hinton testified appellant told him about some physical scars that limited his ability to walk and stand. As previously noted, appellant testified about his left leg and foot. Any error caused by the exclusion of evidence is cured because similar evidence was produced before the jury. *See Canto–Deport v. State,* 751

---

**1.** Why the State even objected is a mystery. The State's objection was enunciated at a bench con-

ference outside the hearing of the court reporter, thus it is not in the record before us.

S.W.2d 698, 700 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) and *Brandley v. State*, 691 S.W.2d 699 (Tex.Crim.App.1985). Here, the error is harmless at best and, beyond a reasonable doubt, made no contribution to the conviction or the punishment. TEX.R.APP.P. 81(b)(2).

There is a secondary analysis available. Intoxication can be proved in either of two ways; first, intoxication can be shown in that the person cannot control the normal use of his mental and physical faculty by reason of the introduction of alcohol to his body; secondly, intoxication can be shown by the fact that the person has a blood alcohol concentration of .10 or more in his body. *See* TEX.REV.CIV.STAT.ANN. art. 6701*l*–1(a)(2)(B) (Vernon Supp.1993). The jury was allowed to consider both methods in determining appellant's guilt. Although the reliability of the intoxilyzer was placed before the jury, the jury was authorized to find appellant guilty on the blood alcohol concentration. As to that issue, the leg scarring was not relevant. We overrule point of error number one.

 In his second point of error appellant raises the insufficiency issue. Evidence of the alcoholic content of a defendant's blood is sufficient to support a conviction. *Bennett v. State*, 522 S.W.2d 507 (Tex.Crim.App.1975). Applying the accepted standard, we overrule point of error number two. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 672 S.W.2d 801 (Tex.Crim.App.1984).

AFFIRMED.

BROOKSHIRE, Justice, dissenting.

This appeal is from a conviction for the felony offense of driving while intoxicated. Simon Sorensen, the appellant, was charged with the offense of DWI. The occurrence occurred on July 16, 1990. On April 27, 1991, the appellant pleaded not guilty before a jury. The jury found the appellant guilty. Appellant pleaded true to the enhancement allegations. Appellant was sentenced on May 3, 1991; the trial court assessed punishment at two and a half years imprisonment and a fine of $1650. This appeal now ensues.

*Partial Factual Narrative*

Officer Hinton stated at trial that he saw nothing usual about the accused when the appellant stopped his car. The appellant exited the vehicle and met Officer Hinton halfway between the patrol unit and the suspect's vehicle. The appellant was asked to perform various tests.

On cross-examination of Officer Hinton, he revealed that he did not observe any moving violation. Also, Officer Hinton testified that the HGN test was inaccurate by about 23 percent of the time. The officer admitted that smokers and others may have blood-shot eyes and still not be intoxicated. The officer admitted furthermore that the intoxilyzer machine was not working properly because it had already recorded "invalid" prior to the appellant being tested. The officer admitted that the appellant had a very heavy Danish accent and his speech was slightly slurred. Some of the evidence crucial to the State's case was not of strong probative value—some being equivocal.

The appellant testified that the officer gave a HGN test to the two passengers but not to him. The appellant further testified that he did not have anything to drink in the car and did not notice either passenger with anything to drink inside the car. The appellant said that he had told the officer that he had a major defect to his left foot. His left heel was half cut off. He had arthritis in both knees and a portion of his calf was missing. The appellant told the officer that as he walked his legs jerked a lot and people had commented that he walked like a duck. These deformities of the appellant were clearly demonstrable and probative (if permitted in evidence) as to the foot, leg, calf and heel. The appellant offered to exhibit these physical defects to the jury; however, the State objected at the time and the objection was sustained by the court.

Appellant's first point of error states that the trial court wrongfully excluded evidence beneficial to the appellant's con-

tentions. Intoxication can be proved in two ways; first, intoxication can be shown by demonstrating that the person cannot control the normal use of his mental and physical faculties by reason of the introduction of alcohol to his body; secondly, intoxication can be shown by the fact that the person has a blood alcohol concentration of a .1 or more in his body. *See* Tex.Rev.Civ. Stat.Ann. art. 6701*l*–1(a)(2). The prosecution's evidence on each basis—while sufficient—is equivocal. The nature and quality of the State's case justifies and necessitates the admission of the excluded evidence.

In determining reversibility the Court of Criminal Appeals set up a two-prong test in the opinion of *Bird v. State*, 692 S.W.2d 65 (Tex.Crim.App.1985). In *Bird* the court held that in order to reverse a trial court judgment, an appellate court must first determine whether or not the offered evidence was relevant and, second, whether the exclusion of such evidence was harmful to the accused. Appellant has met both tests. Common sense and justice require a remand.

Relevancy is determined when the evidence has a tendency to make the existence of any fact that is of consequent to the determination of the case more probable or less probable than it would without such evidence. *See* Tex.R.Crim.Evid. 401. Consequently, any item of evidence that alters the probability of a consequential fact is relevant. In other words, for an item of evidence to alter the probabilities of the existence of the consequential fact and thus be relevant, it must logically increase one's knowledge and enhance the likelihood of ascertaining the truth about the fact. *See Brown v. State*, 757 S.W.2d 739 (Tex. Crim.App.1988). The actual physical condition of appellant's leg, calf, foot and heel was clearly relevant. The issue before this Court is whether the trial court wrongfully excluded relevant *evidence beneficial to the appellant's contention.* This physical condition was beneficial to the appellant's contention and to the core of his defense.

The State heavily relies upon the testimony of Officer Gary Hinton, who was the person who actually arrested the appellant. Officer Hinton's testimony induces the excluded evidence.

Since the State had placed the appellant's lack of control of his movements in issue, it was only fair and equitable that evidence of the scars, injuries and incapacities to his left foot and leg should have been allowed before the jury. This evidence was material, relevant to the determination of crucial facts, being beneficial to appellant's defense.

Visual, real, demonstrative evidence is admissible at trial of a criminal case if it tends to resolve some issue in the case and is relevant. It has high probative value. *See Simmon v. State*, 622 S.W.2d 111 (Tex. Crim.App.1981). Furthermore, the inflammatory nature or sympathetic nature of a particular exhibit or fact will not bar its admissibility, if it is relevant to the issue at trial. The issue need not be contested; the issue only needs to be material. *See Martin v. State*, 475 S.W.2d 265 (Tex.Crim.App. 1972).

I think this demonstrative, real evidence was material and relevant. It was clearly beneficial to appellant's contentions. Besides, the officer had revealed through his own testimony that the appellant had told him that appellant had some physical scars and defects and disabilities that limited his ability to walk and stand, thus the appellant had a right to display these facts. The jury had a right to see the appellant's left leg and foot.

Appellant's physical condition tended to be a direct and forceful contradiction to the State's case. Importantly, the record reflects that at the time in question a test of the intoxilyzer was run which test did not calibrate. It showed "Invalid". Also, there was another test attempted involving the machine which was not completed.

An expert on these machines was asked generally if there were several reasons other than just that the subject was not blowing long enough into the machine that would cause an invalidation, some of which reasons would be printed out and some would not. The expert's answer was, in substance, that there were several reasons why a test may be invalidated. The expert

reasoned: "[B]ut, then, it would have a different reading on it. It wouldn't say, 'Invalid test,' as this one did."

The appellant's testimony concerning the intoxilyzer test was important. The appellant testified that during an early test the machine gave a read-out and that it showed .08–something. Then the appellant was told to stop. Then, according to the appellant, the administrator of the test said: "Hell, I don't know what happened. We've got to do it all over again." When the appellant blew again, "invalidated" appeared on the screen. As I view the record, the nature and quality of the evidence concerning the intoxilyzer is questionable. This state of the record makes the appellant's excluded real and demonstrative evidence more cogent and probative; the admissibility thereof is compelled. I cannot hold, beyond a reasonable doubt, that the exclusion, in view of the totality of the record, was harmless beyond a reasonable doubt.

By the trial court failing to admit all the relevant evidence in order for the jury to have before it all the facts, the trial court has limited the jury in reaching an informed, intelligent verdict. I find this exclusion of evidence to be harmful. Therefore, I would sustain the appellant's first point of error.

Indeed, the Court finds that it was error to exclude the proffered evidence. Since the Court declines to reverse the judgment and remand the cause, I must respectfully dissent. Furthermore, the Court cannot correctly, judiciously find beyond a reasonable doubt that the excluded evidence made no contribution to the conviction. The Court does not have before it the excluded evidence. The Court cannot know the probative evaluation of evidence that is not in the record. In sum, the Court cannot know what the Court does not know. The Court cannot fully comprehend, understand, and correctly evaluate the absent, excluded evidence. Basically the citizen has not been allowed to present his defense.