Crouch v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-007-CR

MICHAEL WALKER CROUCH APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355
TH
 DISTRICT COURT OF HOOD COUNTY

------------

OPINION

------------

I. Introduction

A jury found Appellant Michael Walker Crouch (“Crouch”) guilty of  driving while intoxicated, and the trial court assessed his punishment at fifty years’ confinement.  In two points on appeal, Crouch challenges the legal sufficiency of the evidence supporting his conviction and complains he was not given the opportunity to present a defense.  We will affirm.

II. Background Facts

On July 23, 2000, at approximately three o’clock in the morning, Chief Deputy Fred Bauer of the Hood County Sheriff’s Department was dispatched to a one-car accident.  At the scene, Bauer found a red Ford pickup that had run off the road and into a fence.  Bauer approached Crouch, who was standing by the truck, and asked what had happened.  Crouch said that he had been chasing after his girlfriend’s car, but was unable to negotiate a turn at the intersection.  Bauer noticed that Crouch had slurred speech, slightly bloodshot eyes, and smelled of alcohol.

Bauer requested assistance from the Texas Department of Public Safety, and DPS Troopers Kenneth Zacharias and Steve Tuggle arrived and took over the investigation.  Bauer remained on the scene and conducted an inventory of Crouch’s pickup before releasing the truck to a towing service.  The items listed on the vehicle inventory included: (a) one cold, unopened, twelve-ounce can of Miller Natural Lite beer; (b) one cold, opened, twelve-ounce can of Miller Natural Lite beer on the driver’s side floorboard; (c) another cold, opened, twelve-ounce can of Miller Lite beer in the cab; (d) a cooler in the bed of the truck containing three cold twelve-ounce cans of Miller Lite beer; and (e) three empty twelve-ounce cans of Miller Lite beer in the truck-bed.

As DPS Trooper Zacharias pulled up at the scene, he noticed skid marks through the turn at the intersection, leading into a bar ditch.  The front of the truck was into the fence, and the back of the truck was in the bar ditch.  He estimated that the skid marks began about seventy-five feet from the truck’s location in the ditch, and surmised that the driver had been going too fast and locked the brakes before reaching the intersection.

When Zacharias asked Crouch what had happened, Crouch stated that his wife, Rafflia Smeltzer, did not know how to drive a standard and had wrecked the truck.  Crouch claimed his wife had gone to work after the accident, but he could not provide her work telephone number.  Apparently confused, Zacharias asked how Crouch’s wife had gotten from the accident scene to her workplace.  Crouch replied that Smeltzer had driven her car. Realizing the inconsistency of this statement with his representation that his wife was driving the truck, Crouch then admitted that the story he had told Zacharias was untrue.  He told the officers he had been following his wife’s car, but that her car was too fast for him, and he ran the truck off the road.

Zacharias testified that Crouch’s eyes were glassy, his speech was slurred, and a strong odor of alcoholic beverage emanated from his person. Crouch said he had consumed two Budweiser tallboys, and asked the officers if two was too many.  Zacharias administered the horizontal gaze nystagmus (HGN) test to Crouch.  Crouch exhibited a lack of smooth pursuit in both eyes, nystagmus at maximum deviation in both eyes, and onset of nystagmus prior to forty-five degrees in both eyes, indicating intoxication.

Several months prior to the accident, Crouch had suffered a broken leg. This injury prevented Zacharias from conducting the usual one-leg stand and walk-and-turn field sobriety tests.  Instead, Zacharias asked Crouch to perform a finger counting test.  Crouch missed his ring and middle fingers and counted his index finger twice.  Crouch was unable to recite the alphabet in order, but then said he could not read or write.  Zacharias concluded that Crouch “had voluntarily introduced alcohol into his body and had been operating a motor vehicle and was intoxicated.”  Zacharias placed Crouch under arrest for DWI and transported him to the Hood County Jail.  At the jail, Crouch refused to provide a breath sample. 

After receiving his Miranda warnings, Crouch engaged in a recorded interview in which he first denied having driven a vehicle and having had any alcohol to drink, then admitted to drinking two tallboys.  Crouch also mentioned taking Vicodin on a daily basis for pain, but claimed he had not filled his prescription for the medication in seven weeks.  Finally, while Zacharias stood with his back to Crouch, completing the necessary paperwork to book him into the jail, Crouch spit at Zacharias’s legs. 

Crouch’s girlfriend, Rafflia Smeltzer, testified that she was driving the truck when difficulty with the standard shift or manual steering caused her to lose control.  She explained, “Some food had fell into the floor.  I kind of did the little jerk, and that jerk made me go into a ditch, and that’s where the truck got stuck.”  She could not pinpoint the exact time of the accident, and would only say that it occurred “in the evening, between the evening and the morning.”

After the truck ran off the road, Smeltzer testified that she caught a ride from a passing motorist and went for help, leaving Crouch with the truck.  When she returned to the scene some time later, Crouch and the truck were gone.  Smeltzer said that she had not been drinking when the accident happened, and agreed that there was no reason for Crouch to lie and say he was driving to protect her.  She testified that Crouch lied and said he had been driving the truck “[b]ecause he felt threatened” by the officers and was told to “[m]ake it easy on [himself] and say that [he was] driving.”

Smeltzer, who is a licensed vocational nurse, explained that she was driving because “[Crouch] is on a suspended license, plus he has a broken leg. It is a standard truck.  He has a compound fracture of one of his legs.  It would be impossible for him to drive safely or even an automatic car with that kind of an injury.”

She estimated that Crouch had broken his leg about four months before the charged offense and described the accident at trial:

[Crouch] had climbed up in a tree that was overlooking a pond.  He was cutting down the branch.  The branch was out.  We expected the branch to fall down, but I guess the wind or a freak accident.  I don’t think how it happened.  The branch stood up and came down.

And when it did, it was either going to crush his chest or leg.  And with his chain saw he hit it because he’s a pretty strong guy, and it wound up landing on his leg, blowing the two bones of the lower leg out the skin on the side.

We had to shimmy him down the tree, up a bank, and to the truck.  I had to take off my shirt and tie up his leg there.  If he would have been alone he would have bled to death.

According to Smeltzer, Crouch underwent five surgeries as a result of the compound fracture of his leg.  Defense counsel requested permission for Crouch to exhibit his leg to Smeltzer in order for her to “identify if this is what she saw and the way it looked in July of 2000.”  The trial court refused to allow the demonstration, sustaining the State’s relevancy objection.  Claiming she had seen x-rays, Smeltzer testified that Crouch required multiple surgeries because “the first surgery the pins broke.  The rods on the second surgery, the screws broke.”  The trial court sustained the State’s hearsay objection, preventing Smeltzer from further detailing Crouch’s injuries.

III. Legal Sufficiency

In his first point, Crouch challenges the legal sufficiency of the evidence supporting his DWI conviction.  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict.  
Cardenas v. State
,
 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

Our review of the evidence, outlined above, shows that evidence exists both supporting and contradicting the jury’s findings that Crouch was guilty of driving while intoxicated.  Crouch told officers at the scene that he was driving his truck when it ran off the road.  He said his statements to the contrary were false.  Additionally, Crouch admitted that he had consumed two beers, appeared intoxicated to officers, and failed field sobriety tests.  Although Smeltzer testified that she was the person driving and claimed that Crouch’s leg injury rendered him incapable of driving, the jury could have disbelieved her testimony.  We hold that the evidence, along with reasonable inferences therefrom, is legally sufficient to support Crouch’s DWI conviction.  
See
, 
e
.
g
., 
Zavala v. State
, 89 S.W.3d 134, 137-38 (Tex. App.—Corpus Christi 2002, no pet.) (holding evidence legally sufficient to support DWI conviction even though exact time of accident unknown and no one witnessed defendant operating vehicle).  We overrule Crouch’s first point.

IV. Presentation of Defensive Theories

In his second point, Crouch complains that the trial court deprived him of his Sixth and Fourteenth Amendment due process rights to present a defense when it:  (1) refused to permit Crouch to exhibit his injured leg at trial, (2) limited Smeltzer’s testimony regarding the injury, and (3) limited Smeltzer’s testimony regarding possible motives for Crouch to lie about driving the truck. 

We review the trial court’s admission or exclusion of evidence under an abuse of discretion standard.  
Moreno v. State
, 858 S.W.2d 453, 463 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 966 (1993).  A trial court must be given wide latitude in its decision to admit or exclude evidence.  
Theus v. State
, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992).  Thus, unless the trial court’s evidentiary ruling was outside the zone of reasonable disagreement, we will not interfere.  
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g).

A trial court’s “[e]rroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense.”
  Potier v. State
, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002); 
Wiley v. State
, 74 S.W.3d 399, 405 (Tex. Crim. App.), 
cert. denied
, 123 S. Ct. 415 (2002).  Exclusion of evidence might rise to the level of a constitutional violation where: 1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or 2) a trial court’s clearly erroneous ruling results in the exclusion of otherwise relevant, reliable evidence that “forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.”  
Wiley
, 74 S.W.3d at 405 (quoting 
Potier
, 68 S.W.3d at 665).

Crouch argues that the trial court erroneously deprived him of the opportunity to present his defense—that he was not driving the truck—by prohibiting him from exhibiting his leg in the jury’s presence and by refusing to allow him to elicit testimony from Smeltzer about his leg injury.  However, the record shows that Crouch did present this defensive theory to the jury. Smeltzer provided graphic details concerning Crouch’s leg injury and the severity of the break.  She testified that Crouch underwent numerous medical procedures to repair his leg in the months preceding his arrest for DWI.  She said Crouch was unable to drive because of the injury and said that she was driving the night the accident occurred.  Crouch does not point us to a specific allegedly erroneous trial court ruling that impeded his examination of Smeltzer or prevented him from presenting his defense.  Accordingly, we overrule the portion of Crouch’s second point asserting that he was deprived of the opportunity to present his defense through Smeltzer’s testimony.

Furthermore, we cannot say that it was outside the zone of reasonable disagreement for the trial court to conclude that a physical display of Crouch’s leg was needlessly cumulative or irrelevant.  Crouch cites 
Sorenson v. State
 for the proposition that the trial court erred by refusing to permit him to display his leg.  856 S.W.2d 792 (Tex. App.—Beaumont 1993, no pet.).  In 
Sorenson
, the defendant failed all but one sobriety test.  
Id.
 at 793.  He explained that he had a serious leg injury that hampered his performance on the field sobriety tests, and the evidence showed that he successfully performed the one test that did not involve leg movement.  
Id.
  The defendant wanted to show his leg to the jury because half of his left heel and a portion of his left calf were missing, but the trial court would not let him.  
Id.
 at 794.  Because the State relied heavily upon the defendant’s lack of control over his movements as evidence of his intoxication, the court of appeals held that the trial court abused its discretion by prohibiting the defendant from showing his heel and leg to the jury.  
Id.

In 
Sorenson
, the defendant’s display of his disfigured limb 
was crucial to his defense because it explained his failure of sobriety tests and his lack of control over his movements.  Here, Smeltzer testified about Crouch’s leg injury and his surgeries.  Thus, the trial court could have concluded that showing the surgical scars to Smeltzer for identification purposes was cumulative or irrelevant to the issue of Crouch’s ability to drive.  We hold the trial court did not abuse its discretion by refusing to allow Crouch to display his leg to Smeltzer.  As we have found no error, we further hold that the trial court did not deprive Crouch of his constitutional right to present a defense.  We overrule this portion of Crouch’s second point.

Crouch further argues that he was not allowed to adequately question Smeltzer regarding his possible motives to lie and say that he was driving the truck in order to protect her.  Consequently, he contends he was unable to develop his defensive theory that his extrajudicial confession was false.  The record does not support Crouch’s contention.  Defense counsel elicited testimony from Smeltzer showing that she had three criminal charges pending against her at the time of the accident: a DWI charge, a theft charge, and a felony drug possession charge.  Smeltzer testified that Crouch was aware of the charges pending against her.  The jury could have inferred from this testimony that Crouch lied and said he was driving in order to protect Smeltzer from further legal troubles.  Crouch does not point us to, and we cannot find, any support for his claim that the trial court prevented him from further developing this theory.  We hold Crouch was not deprived of his constitutional right to present a defense.  We overrule the remainder of Crouch’s second point.

V. Conclusion

Having overruled both of Crouch’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

[Delivered March 20, 2003]