COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-232-CR

 

 

JAMES PROX                                                                                    APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

                FROM
THE 78TH DISTRICT COURT OF WICHITA COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
Introduction








The
State charged Appellant James Prox, a Texas Department of Criminal Justice
(TDCJ) inmate, with committing an aggravated assault with a deadly weapon
against Rodney Howard, another TDCJ inmate.[2]  The jury found Prox guilty and assessed his
punishment at life imprisonment.  The
trial court entered judgment accordingly, and Prox brings three issues on
appeal.

II. 
Evidentiary Issues

In
his third issue, Prox challenges the factual sufficiency of the evidence to
support his conviction and contends that A[t]he
great weight and preponderance of the evidence establishes that the jury
wrongfully rejected [his] claim of self-defense.@  In his first issue, he argues that the trial
court abused its discretion by excluding evidence relevant to his self-defense
claim.

A.  Factual Sufficiency

1.  Standard of Review








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman,
280 S.W.3d at 246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.

Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those determinations
concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

Because
self‑defense is classified as a defense rather than an affirmative
defense, we apply the factual sufficiency review generally applied to
convictions to an appellant=s
challenge to the jury=s implicit finding beyond a
reasonable doubt against his self‑defense claim.  Bundy v. State, 280 S.W.3d 425, 433
(Tex. App.CFort
Worth 2009, pet. ref=d). 

2.  Evidence

a.  Howard=s
Testimony








Howard
testified that on December 10, 2004, Prox, his cell mate of two to three weeks,
attacked him with a razor that was tied to his hand.  Howard testified that Prox wanted to be in
the cell by himself, so Aright off@
they had problems.  On the day of the
incident, Prox left the cell for recreation. 
When he returned, he made a comment to Howard about wanting a cell by
himself, to which Howard retorted that he thought Aall
diabetic inmates should be in the cell with one another anyway.@  Prox is diabetic.

Howard
testified that Prox started the altercationChe
saw Prox approach him from behind in the reflection from the plexiglass pane in
the cell door and then Prox attacked him:

I saw him when he got up, and I saw him move
behind me. And when I turned around, he hadChe was raised up just like he was going to
strike me.  But when he struck me, it wasChe cut me.  Cut me on my biceps. . . . 

 

I tried to grab his hand, and then he cut me
on my right wrist.  By this time, I didCI was able to get
hold of his hand.  And I kneed him in his
groin.  And I pushed him up against the
wall trying to get leverage on his arm.

 

He cut me in the face a couple of times, and
cut me in my chest, also.  So I grabbed
him and rushed him across the cell.  And
got on to the bottom bunk and got on top of him and started punching him in his
face. . . . 

 

I
was punching him, trying to knock him out so I could take whatever weapon he
had from him.  Because I realized he had
it tied onto his hand.  And the only way
I was going to be able to get it away from him was to knock him out.

Howard
testified that officers arrived while he was punching Prox and that the
officers told them to break it up.  He
punched Prox a few more times, knocking Prox out to the extent that he could
unwrap the string from Prox=s
hand, remove the weapon, and throw it to the officers through the Abean
slot@[3] in
the cell door.








b.  Prox=s
Testimony

Prox
testified that on December 10, 2004, he left the cell for recreation to Aget
away from [Howard].@  He stated, AThat
dude [Howard] had been trouble ever since he moved in there,@ and
testified that he had filed administrative forms trying to move away from
him.  When Prox returned from recreation,


[Howard] was sitting there
waiting.  He jumped down.  Told meCsaid
you trying to go out there to pay somebody to jump on me.  I said, man, I don=t
know anything about you.  So when I sit
on the bed, heCI
thought he hit me.  But he cut me.  When he cut me, I throwed [sic] my hands up.

He testified that the cut he
referred to was depicted on State=s
Exhibit 36, and he tried to take off his shirt to show the jury the scars from
the cuts on his chest.  Prox also
testified that he did not have a knife, that he hit Howard with a coffee cup in
self-defense, and that Howard was a known psychopath who had choked him two or
three times before the incident.[4]









Prox
stated, AI
don=t do
nothing.  I don=t
bother nobody.  Only thing I do is try to
do my time.@  However, on cross-examination, he admitted
that he had had problems while incarcerated, including disciplinary cases
charging him with fighting with a weapon, fighting without a weapon,
threatening an officer, and threatening an inmate.  He claimed that he had been set up.  The trial court gave a limiting instruction
on credibility with regard to this testimony.

Prox
testified that his physical condition at the time was too poor for him to
attack anyone because he had been waiting on bypass surgery and hernia surgery
and that his Astomach
was so big and so swole [sic] that [he] couldn=t
even get up in the bed.@[5]  He testified that he had bad arteries, that
he had 180 pounds of pressure in his right leg and eighty pounds of pressure in
his left leg, that he had high blood pressure, and that he was diabetic.  Prox claimed that because he had no
circulation in his legs, he was assigned the bottom bunk and this made Howard
angry.








Prox
attempted to unbutton his shirt to show the jury his surgical scars.  The trial court sustained the State=s
objection to the relevance of Prox=s
post-incident surgical scars and Abased
upon not having the medical testimony that would establish that [the medical
condition] was affecting him on the date of th[e] occurrence,@ but
it allowed Prox to make a bill of exception. 
In Prox=s
bill of exception, he testified that the first surgery was performed about a
month after the incident and the second surgery occurred six months later.  He testified that he had a herniated small
intestine, that he had a scar ten inches long and one inch wide from the first
procedure, and that the doctors Ahad
to go all the way down and inside the stomach and on both sides of the legs to
make enough to get circulation in the legs.@  He testified that the doctors discovered that
he had artery blockage during his second surgery and that his second surgery
resulted in a scar six inches long.  Prox
stated that his circulatory problems existed at the time of the incident with
Howard.

c.  Other Evidence

At
the time of the incident Howard was thirty-nine-years old, six feet tall, and
weighed around 150 pounds.  He had been
convicted of kidnapping, robbery, and aggravated sexual assault, and he had two
prior burglary-of-a-habitation convictions. 
Prox was a forty-eight-year-old insulin-dependent diabetic receiving
injections twice a day, with additional health problems listed above.  He was five feet, five inches tall, weighed
around 158 pounds, and had been convicted of attempted murder and murder with a
deadly weapon.








Photographs
of Howard=s
injuries to his face, neck, shoulder, chest, wrist, and hand were admitted in
evidence.  The trial court also admitted
in evidence photographs of Prox=s
injuriesCHoward
admitted that he Aswole [sic] up one of [Prox=s]
eyes@ and
might have busted his lip and that Prox might have been cut when they were
wrestling and when he tried to take the razor from Prox. The weapon, composed
of one or more razor blades attached to a plastic razor handle,[6]
was also admitted in evidence.

Officer
Marion Johnston, who had been working in Prox and Howard=s
cell block that day, corroborated Howard=s
description of the fight, although he admitted that he did not know who
instigated it.  He testified that other
inmates alerted him to the cell fight and that when he arrived, he saw Howard
on top of Prox on the bottom bunk, trying to remove a weapon from Prox=s
hand.  Prox had the weapon tied with a
string to his wrist, and Officer Johnston saw Prox slash out at Howard with the
weapon at least three times.  He and the
other officers ordered the inmates to stop fighting, which the inmates did
after a few more blows; the weapon dropped from Prox=s
hand, still attached to his wrist, and Howard complied with one of the other
officer=s
orders to grab the weapon and toss it out of the cell.  The officers secured the inmates with hand
restraints and took them for medical treatment because both had injuries.








Officer
William Moss testified that he responded with Officer Johnston to the fight
between Prox and Howard.  He testified
that Prox had a weapon wrapped in his right hand and that Prox and Howard were
wrestling, with Howard trying to get the weapon from Prox and yelling, A[H]e=s
stabbing me. He=s stabbing me.@  He testified that the fighting stopped when
the officers threatened to gas them, Prox unwrapped the weapon from his hand,
and Howard picked up the weapon and threw it out of the bean slot.  Officer Moss also testified that the usual
protocol for an inmate going to recreation is to search the inmate before he is
escorted to recreation and to search him upon his return from recreation.[7]  He stated that he had no personal knowledge
as to where the weapon was kept, other than in some crevice that had evaded
detection in prior cell searches.

Julie
Diamond, a criminal investigator for the Office of the Inspector General,
testified that she investigated the incident. 
She took photographs of the inmates=
cell immediately after the incidentCincluding
photographs of a towel on the sink area with blood on it and blood droplets and
smears on the floor, walls, and bottom bunkCand
of the inmates=
injuries.  She also collected the
bloodstained sheet that was on top of the bottom bunk.

3.  Analysis








To
convict Prox of aggravated assault with a deadly weapon, the jury had to find
that Prox intentionally, knowingly, or recklessly caused bodily injury to
Howard by cutting him with a razor blade and that a razor blade was a deadly
weapon.  See Tex. Penal Code Ann. ' 1.07(a)(17)
(Vernon Supp. 2009) (defining deadly weapon as anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury
or anything that, in the manner of its use or intended use, is capable of
causing death or serious bodily injury), ' 22.02
(Vernon Supp. 2009) (defining elements of aggravated assault with a deadly
weapon).  To acquit Prox of committing
aggravated assault with a deadly weapon, the jury would have had to find that
Prox was justified in using force to defend himself.  See id. ' 9.31
(Vernon Supp. 2009) (defining justification of self-defense).  A defensive instruction such as self-defense
is only appropriate when the defendant=s
evidence essentially admits to every element of the offense including the
culpable mental state but interposes the justification to excuse the otherwise
criminal conduct.  Shaw v. State,
243 S.W.3d 647, 659 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct.
2486 (2008).

According to Prox, the evidence showed
that:  

 

(1)
[Prox] had diabetes, a chronic medical condition that seriously limited his
mobility and reduced his strength while Mr. Howard was younger, stronger, and
physically fit;

 

(2)
[Prox] and Mr. Howard are both convicted felons and both denied instigating the
assault;

 

(3)
[Prox] and Mr. Howard disliked each other;

 

(4)
[J]ust before the fight, Mr. Howard accused [Prox] of setting up a Ahit@ on Mr. Howard; 

 

(5)
[Prox] had just returned from the recreation yard when the assault occurred; 

 

(6)
[P]olicy required [Prox] to be searched for contraband when he returned from
the yard;

 

(7)
Mr. Howard had not left the cell on the day of the fight; 








(8)
[O]nly [Prox] and Mr. Howard have personal knowledge of who started the fight
or who had the weapon when the fight started;

 

(9)
[T]he assault occurred on the bed at the far wall of a dimly-lit cell;

 

(10)
[T]he officers did not see the fight start;

 

(11)
[T]he officers viewed the fight from outside the cell and about [twelve] feet
away from the bed, which was partially obscured by a hanging sheet;

 

(12)
[T]he officers saw Mr. Howard on top of and struggling with a prone [Prox];

 

(13)
[T]he officers saw a weapon fall to the floor during the fight;

 

(14)
[T]he weapon was a shank made from a razor; and

 

(15) [B]oth [Prox] and Mr.
Howard sustained cuts during the fight.

Prox complains that the only
evidence supporting the verdict was Howard=s
testimony and the officers=
testimony that they saw the weapon fall out of Prox=s
hand.

According
to Prox=s
recital above and the necessary inferences therefrom, Prox was weak and Howard
was strong, one was lying about who started the fight (in his view, Howard),
both were cut, the officers saw Howard on Prox and saw a weapon fall, and Prox
had been at recreation before the fight (and must therefore have been searched
before re-entering the cell) so the weapon could not have been his.  Prox also claims that Howard=s
testimony was not more credible than his own.








The
jury had the responsibility to determine the weight and credibility of the
evidenceCessentially,
whether to believe Howard or ProxCand
we must give due deference to that determination.  See Steadman, 280 S.W.3d at 246; Johnson,
23 S.W.3d at 9.  Viewing all of the
evidence in a neutral light, the jury could have chosen to believe Howard=s
testimony that Prox instigated the altercation by attacking and cutting him,
particularly in light of the photographs of Howard=s
injuries to his face, neck, shoulder, chest, wrist, and hand and Officer
Johnston=s
testimony that he saw Prox slash out at Howard with a weapon at least three
times during the incident.  See Steadman,
280 S.W.3d at 246.  Furthermore, although
Prox claimed he was physically incapable of attacking Howard, the record
reflects, based on his own testimony, that he was physically able to go to
recreation and to defend himself with a coffee mug. Therefore, the jury could
have reasonably concluded that Prox was also physically able to perpetrate an
attack on his cell mate.  And Officer
Moss testified that the weapon could have been hidden in the cell and could
have belonged to either inmate.  From
this, and from Officers Johnston and Moss=s
testimonies about seeing Prox use the weapon, the jury could have reasonably
concluded that Prox hid the weapon in the cell before going to recreation and
then used it upon his return to attack Howard.








Additionally,
based on our review of the record, we cannot agree with Prox that the evidence
was factually insufficient to justify the jury=s
rejection of his self-defense claim.  We
cannot say that the evidence supporting the conviction is so weak that the jury=s
determination is clearly wrong and manifestly unjust or that the conflicting
evidenceCProx=s
testimony containing his version of eventsCso
greatly outweighs the evidence supporting the conviction that the jury=s
determination is manifestly unjust.  See
Steadman, 280 S.W.3d at 246; Watson, 204 S.W.3d at 414B15,
417.  Therefore, we overrule Prox=s
third issue.

B.  Self-Defense

In
his first issue, Prox complains that the trial court erred by excluding Aevidence
about his incapacitating medical conditions,@
which he contends was relevant to his claim of self-defense because Ait
tended to prove he lacked the physical strength to initiate an assault.@  Specifically, he argues that the trial court
prevented him from presenting an effective defense by refusing to let the jury
hear about the debilitating nature of his medical conditions and to see the
severe scarring on his body left by the surgeries for his circulatory problems
and hernia.  He contends that admission
of this evidence Awould have increased the
jury=s
knowledge about the improbability of [Prox] instigating a physical attack@ on
Howard. 

1.  Standard of Review








We
review a trial court=s decision to exclude
evidence for an abuse of discretion.  See
Green v. State, 934 S.W.2d 92, 101B02
(Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997); Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  As long as the trial court=s
ruling falls within the zone of reasonable disagreement and was correct under
any theory of law applicable to the case, we will affirm its decision.  Winegarner v. State, 235 S.W.3d 787,
790 (Tex. Crim. App. 2007).  The trial court=s
decision must be reasonable in view of all the relevant facts.  Santellan v. State, 939 S.W.2d 155,
169 (Tex. Crim. App. 1997).  The mere
fact that a trial court may decide a matter within its discretionary authority
in a different manner than an appellate court would in a similar circumstance
does not demonstrate that an abuse of discretion has occurred.  Manning v. State, 114 S.W.3d 922, 926
(Tex. Crim. App. 2003).

2.  Analysis

ARelevant
evidence@
means evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence. 
Tex. R. Evid. 401.  Evidence is
relevant to self-defense when it shows that a defendant reasonably believed
that Aforce
[was] immediately necessary to protect [himself] against the other=s
use or attempted use of unlawful force.@  See Tex. Penal Code Ann. ' 9.31(a);
Teakell v. State, 143 Tex. Crim. 471, 473, 159 S.W.2d 504, 504B05
(1942).  Furthermore, on the issue of
self‑defense, testimony as to the relative size, strength, and other
physical characteristics showing the disparity between the accused and the
complainant, as a ground for apprehension, and also upon the question as to
which party was the aggressor, is relevant. 
Mosby v. State, 482 S.W.2d 256, 258 (Tex. Crim. App. 1972)
(addressing relevance of the condition of a deceased complainant).








As
set out above, some of Prox=s
testimony about his post-incident surgery and medical condition was excluded by
the judge Abased
upon the relevance, and also based upon not having the medical testimony that
would establish that it was affecting him on the date of this occurrence.@  A review of Prox=s bill
of exception reveals that Prox would have testified that he had two surgeries
after the incident, one to repair his herniated small intestine and another to
correct circulation problems in his legs, and that prior to surgery, his
stomach was distended and he could put no pressure on his legs. 

We
initially note that the trial court allowed Prox to present testimony to the
jury that his physical condition at the time of the incidentChis
diabetes, his swollen stomach, his then-upcoming bypass and hernia surgeries,
his high blood pressure, and the lack of circulation in his legsCwas
too poor to allow him to attack anyone. 
And photographs taken immediately after the incident, showing his
physical appearance at the time, were presented to the jury.








Although
Prox argues that the jury needed to see his post-incident surgical scars to
show that his subsequent surgery Awas
seriously invasive and indicative of his debilitated medical condition,@ we
have found no cases holding that such after-the-fact evidence is relevant.  Cf. Teakell, 143 Tex. Crim. at
473, 159 S.W.2d at 504B05 (holding that it was
error to exclude appellant=s
requested exhibition on the witness stand of the scars from the wounds that
were inflicted on him during his altercation with the complainant); Boyd v.
State, No. 01-98-00167-CR, 1999 WL 442156, at *1B3
(Tex. App.CHouston
[1st Dist.] July 1, 1999, no pet.) (not designated for publication) (holding it
was error to exclude exhibition of Boyd=s
knee-surgery scars when his loss of normal use of physical faculties was at
issue in DWI case, but the error was harmless when Boyd=s
witness testified that Boyd had undergone knee surgery, to explain his failure
to successfully complete the one-legged-stand field sobriety test); Sorenson
v. State, 856 S.W.2d 792, 793B95
(Tex. App.CBeaumont
1993, no pet.) (holding that trial court committed harmless error in felony DWI
case when it excluded evidence pertaining to the condition of appellant=s
legs and feet at the time he performed field sobriety tests involving leg
movement); Wolford v. State, 675 S.W.2d 530, 533 (Tex. App.CHouston
[14th Dist.] 1983, pet. ref=d)
(holding that showing complainant=s
wounds and surgical scars was relevant to appellant=s
claim of self-defense when there was disputed testimony about whether appellant
shot him in the abdomen or in the back).

To
the contrary, one of our sister courts has upheld the exclusion of similar
evidence when, as here, it failed to show the appellant=s
condition at the time of the incident.  See
Sneed v. State, 955 S.W.2d 451, 455B56
(Tex. App.CHouston
[14th Dist.] 1997, pet. ref=d)
(upholding exclusion in DWI case when appellant=s
medical records were created approximately a week after his arrest and so were
not relevant to prove that appellant had actually sustained a head injury or
had taken medication at the time he was arrested).  We hold that the trial court did not abuse
its discretion by excluding evidence of surgical scarring that occurred after
the incident in question, and we overrule this portion of Prox=s
first issue.








According
to his bill of exception, Prox would also have testified that he could not push
down on his legs or put pressure on his legs. 
While this is somewhat redundant of his testimony that the trial court
admitted, we will assume, without deciding, that it was error to exclude the
testimony about his legs= condition.

We
must conduct a harm analysis to determine whether the assumed error calls for
reversal of the judgment.  Tex. R. App.
P. 44.2.  The admission or exclusion of
evidence is generally not of constitutional dimension.  See Solomon v. State, 49 S.W.3d 356,
365 (Tex. Crim. App. 2001); see also Walters v. State, 247 S.W.3d 204,
222 (Tex. Crim. App. 2007).  Hence, we
apply rule 44.2(b)Cthe exclusion must have
affected a substantial right.  Tex. R.
App. P. 44.2(b); see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998) (op. on reh=g), cert. denied, 526
U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639, 642B43
(Tex. App.CFort
Worth 1998, pet. ref=d).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643. Conversely, an error does not affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon, 49 S.W.3d at 365; Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).








In
making this determination, we review the record as a whole, including any
testimony or physical evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla v. State, 78 S.W.3d 352, 355 (Tex.
Crim. App. 2002).  Based on our review of
the record, we conclude that, in the context of the entire case against Prox,
any error by the trial court in excluding the testimony in question did not
have a substantial or injurious effect on the jury=s
verdict and did not affect his substantial rights in that the evidence of his
medical condition and claim of physical inability to attack Howard was already
squarely before the jury.  See King,
953 S.W.2d at 271.  Thus, we disregard
the error, if any, and we overrule the remainder of Prox=s
first issue.  See Tex. R. App. P.
44.2(b).

III. 
Jury Charge








In
his second issue, Prox argues that, with regard to the trial court=s
self-defense instructions to the jury, the trial court erred by making Arepeated
and unnecessary references to a razor,@
which he also contends assumed the truth of a contested issue.  He further complains that the trial court
erred by denying his own requested jury instructions on self-defense.  For purposes of our analysis, we assume,
without deciding, that Prox was entitled to an instruction on self-defense.[8]  Cf. Shaw, 243 S.W.3d at 657B59; Ex
parte Nailor, 149 S.W.3d 125, 133B34
(Tex. Crim. App. 2004) (stating that when Nailor argued that he did not perform
the actions alleged by the State, he was not entitled to an instruction on
self-defense).

Prox
objected Ato
the inclusion of the manner and means language in the application paragraph@ of
the self-defense deadly force and non-deadly force instructions.  The deadly-force self-defense instruction in
the application portion of the trial court=s
charge stated:

Now,
if you find from the evidence beyond a reasonable doubt that the defendant,
James Prox, did intentionally, knowingly, or recklessly cause bodily injury to
Rodney Howard by cutting Rodney Howard with a razor blade, and did then and
there use or exhibit a deadly weapon, to-wit: 
a razor blade that in the manner of its use or intended use was capable
of causing death or serious bodily injury during the commission of the said
cutting, as alleged, but you further find from the evidence, or you have a
reasonable doubt thereof, that viewed from the standpoint of the defendant at
the time, from the words or conduct or both, of Rodney Howard, it reasonably
appeared to defendant that his life or person was in danger and there was
created in his mind a reasonable expectation or fear of death or serious bodily
injury from the use of unlawful deadly force at the hands of Rodney Howard, and
that acting under such apprehension and reasonably believing that the use of
deadly force on his part was immediately necessary to protect himself against
Rodney Howard=s
use or attempted use of unlawful deadly force, he cut Rodney Howard with said
deadly weapon, and that a reasonable person in defendant=s
situation would not have retreated, then you will find the defendant not guilty.  [Emphasis added.]

The
non-deadly-force self-defense instruction in the application portion of the
trial court=s
charge stated:  








Now,
if you find from the evidence beyond a reasonable doubt that on the occasion in
question the defendant, James Prox[,] intentionally, knowingly, or recklessly
cause[d] bodily injury to Rodney Howard by cutting Rodney Howard with a
razor blade, but you further find from the evidence, as viewed from the
standpoint of the defendant at the time, that from the words or conduct, or
both, of Rodney Howard it reasonably appeared to the defendant that his life or
person was in danger and there was created in his mind a reasonable expectation
or fear of bodily injury from the use of unlawful force at the hands of Rodney
Howard, and that acting under such apprehension and reasonably believing that
the use of force on his part was immediately necessary to protect himself
against Rodney Howard=s use or attempted use of
unlawful force, he cut Rodney Howard with a razor blade, then you should
acquit the defendant on the grounds of self-defense, or, if you have a
reasonable doubt as to whether or not the defendant was acting in self defense
on said occasion and under the circumstances, then you should give the
defendant the benefit of that doubt and say by your verdict not guilty.  [Emphasis added.]

During the charge
conference, Prox elaborated on his objection, stating, 

It=s
our position that if the State is not bound by manner and means because manner
and means is not an element of an offense, it would also not be an element of a
defense.  And the jury could possibly
reject the defendant=s self-defense instruction
because they didn=t find thatCthat
the manner and means was proven as it=sCas
it=s
charged to the jury.[9]








The State responded that, if
Prox=s
objection was that it was all surplusage, then the State was bound by it, so it
was appropriate to have that language in the charge.  Prox provided no further argument on the
issue.  The trial court overruled Prox=s
objection,[10]
and it denied his request that the trial court substitute Prox=s
proposed instructions for non-deadly and deadly force.[11]

A.  Standard of Review

Although
Prox objected to the inclusion of the manner and means in the self-defense
instructions, he did not articulate at trial the argument that he now presents
on appeal, which is that

by
submitting, over [Prox=s] objections, jury
instructions that improperly commented on the weight of the evidence by
assuming the existence of a controverted fact and drawing undue attention to
one piece of evidence . . . the charge repeatedly and unnecessarily stated that
the manner and means of assault was with a razor, which was a contested issue.  [Emphasis added.]

 








Appellate
review of error in a jury charge involves a two-step process.  Abdnor v. State, 871 S.W.2d 726, 731
(Tex. Crim. App. 1994); see also Sakil v. State, 287 S.W.3d 23, 25B26
(Tex. Crim. App. 2009).  Initially, we
must determine whether error occurred. 
If it did, we must then evaluate whether sufficient harm resulted from
the error to require reversal.  Abdnor,
871 S.W.2d at 731B32. 

A
complaint made on appeal must comport with the complaint made in the trial
court or the error is unpreserved.  See
Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (AWhether
a party=s
particular complaint is preserved depends on whether the complaint on appeal
comports with the complaint made at trial.@).  That is, the complaint must be Aessentially
the same.@  Clarke v. State, 270 S.W.3d 573, 580B83
(Tex. Crim. App. 2008) (discussing cases). 
To determine whether the complaint on appeal comports with that made at
trial, we consider the context in which the complaint was made and the parties=
shared understanding at that time.  Pena,
285 S.W.3d at 464.  Based on the context
presented to us by the record, it would appear that Prox objected to the inclusion
of the manner and means language as surplusage. 
Therefore, we apply the standard of review for unpreserved error to his
jury charge complaint.  That is, we must
decide whether, if there was error, it was so egregious and created such harm
that he did not have a fair and impartial trial.  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g);
see Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Allen v. State,
253 S.W.3d 260, 264 (Tex. Crim. App. 2008); Hutch v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996). 

B.  Improper Comment








1.  Manner and Means

As a
general rule, the trial court=s
charge to the jury should correspond to the allegations in the indictment.  Hardie v. State, 588 S.W.2d 936, 938
(Tex. Crim. App. 1979); see also Andrews v. State, 652 S.W.2d 370, 374
(Tex. Crim. App. 1983) (AThe general rule is that it
is usually permissible to track the pertinent part of the charging instrument
when preparing the application paragraph.@).  And proof of the use or exhibition of a
deadly weapon is an essential element of the offense of aggravated assault with
a deadly weapon as charged in the indictment. 
See Leal v. State, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009) (A[A]ggravated
assault based on the use of a deadly weapon may become assault if the alleged
use of a deadly weapon is disproved.@); see
also Rodriguez v. State, No. 04‑04‑00230‑CR, 2005 WL
899963, at *2 (Tex. App.CSan Antonio Apr. 20, 2005,
pet. ref=d)
(mem. op., not designated for publication) (AProof
of the use or exhibition of a deadly weapon is an essential element of the
offense of aggravated assault as it was charged in the indictment [under penal
code section 22.02(a)(2)].@).

The indictment here alleged that Prox 

 

intentionally,
knowingly, or recklessly cause[d] bodily injury to Rodney Howard, by cutting
Rodney Howard with a razor blade and did then and there use or exhibit a deadly
weapon, to-wit:  a razor blade, that in
the manner of its use or intended use is capable of causing death or serious
bodily injury, during the commission of said offense.

 








The language in the
deadly-force self-defense instruction corresponded to that of the
indictment.  See Hardie, 588
S.W.2d at 938; see also Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon
2007) (stating that in delivering the jury charge, the trial court shall set
forth the law applicable to the case, Anot
expressing any opinion as to the weight of the evidence, not summing up the
testimony, discussing the facts or using any argument in [its] charge calculated
to arouse the sympathy or excite the passions of the jury@).  And the language in the non-deadly force
self-defense instruction corresponded to that contained within the trial court=s
lesser-included-offense instruction on assault. 
Therefore, the trial court necessarily included the manner and means of
the alleged offense in its self-defense instructions.  We overrule this portion of Prox=s second
issue.

2.  Repetition

Prox complains that the trial court=s charge Aused the unnecessary
and extra-statutory term >razor= in at least four
application paragraphs.@  Although Prox argues that specifying the
razor is a comment on the weight of the evidence, we disagree on the facts
presented by this record.

 

Texas Jurisprudence sets out the following on
the issue of repetition:

 

It is error to give undue prominence to
certain issues by repeating instructions relative to the same issue.  Where the jury has once been instructed on a
proposition of law, it is not necessary that the proposition be repeated in
every paragraph of the charge.

 

However, repetitions are not error when they
are necessary in order to apply any given rule of law to the various phases of
the case raised by the evidence, or when they are not given such prominence as
to mislead the jury into believing that the issue referred to is the
controlling one.  Thus, the definition of
an offense may be contained in more than one paragraph of the charge.  








24 Tex. Jur. 3d Criminal
Law ' 3175
(2010) (internal citations omitted); see also Woodard v. State, 54 Tex.
Crim. 86, 88, 111 S.W. 941, 942 (1908) (AThe
charge does repeat on the issue of provoking the difficulty, but the charges
are accurate in every particular as laid down by the rules of this court, and
we will not reverse the case on account of repetition alone.@).  Repetition of the indictment language as to
the alleged deadly weapon (razor) was necessary to apply the law of
self-defense as raised by the evidence.  See
24 Tex. Jur. 3d Criminal Law ' 3175.








Furthermore,
while a seemingly neutral instruction may constitute an impermissible comment
on the weight of the evidence when it singles out a particular piece of
evidence for special attention, this is not what occurred here.  Cf. Bartlett v. State, 270 S.W.3d 147,
152, 154 (Tex. Crim. App. 2008) (holding that trial court=s
seemingly neutral explanation of the law with respect to the admissibility of
the refusal to take a breath test constituted an impermissible comment on the
weight of the evidence).  That is,
because the case turned on the specific manner and means usedCwhether
Prox cut Howard with a razor bladeCby
necessity, the jury instructions on aggravated assault, assault as a
lesser-included offense, use of deadly force in self-defense, and use of
non-deadly force in self-defense required the jury to make a finding on that
issue.  Cf. Veteto v. State, 8 S.W.3d
805, 816B17
(Tex. App.CWaco
2000, pet. ref=d)
(holding that instruction improperly singled out complainant=s
testimony when it stated that if the jury believed Athe
victim=s@
testimony beyond a reasonable doubt, this was sufficient to support a finding
of guilt, and that referring to the complainant as Athe
victim@
instead of as Athe
alleged victim@
also constituted an improper comment on the weight of the evidence because
aggravated sexual assault case=s
sole issue was whether complainant was actually a victim), abrogated on
other grounds by State v. Crook, 248 S.W.3d 172 (Tex. Crim. App. 2008).








We
hold that the inclusion of the word Arazor@ in
the jury instructions, when viewed in light of the entire jury charge, does not
improperly assume that Prox used a razor. 
Rather, the jury is asked to decide that if it believed that Prox
used a razor to cut Howard, as alleged in the indictment, was Prox=s
action justifiable as an act of self-defense? 
Cf. Marlow v. State, 537 S.W.2d 8, 9B11
(Tex. Crim. App. 1976) (stating that there are two exceptions that allow a
trial court to assume in its charge any fact to be trueCwhen
the fact is one that the court may judicially notice and when the defendant
judicially admits that the fact is trueCand
holding that neither exception applied when charge stated, Aif
you find . . . the motion picture film depicting various acts of oral sodomy .
. . to be obscene . . .,@ when it assumed that the
motion picture film depicted those acts); Harkins v. State, 268 S.W.3d
740, 745B46
(Tex. App.CFort
Worth 2008, pet. ref=d) (holding that penal code
section 49.10 referring to Athe
dangerous drug@
must be read with intoxication definition in section 49.01 referring to Aa
dangerous drug,@ and that instruction
specifying that Athe fact that the defendant
is or has been entitled to use the dangerous drug is not a defense [to
DWI],@
when one of the fact issues for the jury was whether Harkins had taken a
dangerous drug at all, constituted an improper comment on the weight of the
evidence). 

Because
the jury instructions in this case required a statement of the manner and
means, and because repeating the manner and means did not constitute error, we
need not address the remaining portion of Prox=s
second issue, in which he complains that the trial court erred by denying both
of his requested jury instructions on self-defense.  See Tex. R. App. P. 47.1.  We overrule the remainder of Prox=s
second issue.

IV. 
Conclusion

Having
overruled each of Prox=s issues, we affirm the
trial court=s
judgment.

 

 

PER CURIAM

 

PANEL:
MCCOY, DAUPHINOT, and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
May 27, 2010











[1]See Tex. R. App. P.
47.4.





[2]Because Prox
challenges the factual sufficiency of the evidence, we will discuss the facts in
detail below.





[3]A Abean slot@ is the section of
the door used to put food into a cell to feed the inmates. 





[4]On cross-examination,
Prox testified,

 

Q.  So it=s your story that Mr. Howard was just picking
on you for no reason; is that correct?

 

A.  Yes, sir.

 

Q.  That he picks on everybody?

 

A.  He picks onCthat=s why he got moved.

 

Q.  And everybody knows he=s crazy and he=s trouble?

 

A.  Everybody know[s] it.





[5]He testified, AI=m taking so much
medication that I couldn=tCI couldn=t do nothing,@ and AI=m not healthy and
strong no more.@





[6]More than one witness
testified that this type of weapon is common in prison.  Officer Johnston testified that such weapons
are capable of causing serious bodily injury and possibly death if they strike
a jugular vein. 





[7]The weapon=s maker was
unknown.  In response to Prox=s counsel=s question, AFor all you know,
Rodney Howard has a certificate of title to that weapon; is that right?@ Officer Moss
replied, AHe could.@  However, he also testified that based on what
he observed, his impression was that Prox was the weapon=s owner.





[8]Prox states in his
briefing to this court, AAppellant denied that
he used a weapon, much less a deadly weapon, to defend himself against Mr.
Howard.@





[9]We note that if the
jury did not find that the manner and means was proven as charged, then it
would have to acquit Prox, also as charged in the jury instructions.





[10]The trial court
elaborated upon its decision, stating,

 

Well,
my thought is that the language has been used the same in the charging
paragraph of the offense . . . as in the use of self-defense, and that it=s consistent to use
it both places or to take it out both places. 
And in the defense of self-defense it seems to me that basically you
are, in essence, admitting the allegation that=s in the indictment,
but simply saying I have a defense to why I did that.

And so
since it=s tracking the
language in the indictment and it=s being used consistently, both in the
charging paragraph as well as in the defensive paragraph, then I will overrule
the objection. 





[11]In his proposed
instructions, Prox asked that the application paragraphs for self-defense state
that if the jury found that he Adid cause bodily
injury to Rodney Howard,@ then to consider
whether he acted in self-defense, without specifying how he caused the
bodily injury.